Bernice **BENNETT**, Plaintiff–Appellant,

v.

Louis W. **SULLIVAN**, Secretary of Health and Human Services, Defendant–Appellee,

Gray Panthers Advocacy Committee, Older Womens League, Amici Curiae.

No. 89–1748.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1990.

Decided Oct. 25, 1990.

As Amended Nov. 6, 1990.

Leah Jane Seaton, Legal Aid Bureau, Inc., Baltimore, Md., argued (Mary D. Oldewurtel, Legal Aid Bureau, Inc., Baltimore, Md., Stephanie Edelstein, Legal Aid Bureau, Inc., Riverdale, Md., on the brief), for plaintiff-appellant.

Jennifer Hay Zacks, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., William Kanter, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on the brief), for defendant-appellee.

Gill Deford, Sharlene Deskins, Peter Komlos–Hrobsky, Nat. Sr. Law Center, Los Angeles, Cal., Laura Loeb, Older Women's League, Washington, D.C., for amici curaie.

Before RUSSELL, WIDENER and PHILLIPS, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

In this case, we consider the effect of the recent Supreme Court case of *Sullivan v. Zebley,* —— U.S. ——, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), on the Secretary of Health and Human Services' (the "Secretary") regulations regarding disability benefits for widows. Under the Social Security Act (42 U.S.C. §§ 1381 *et seq.*), widows [1] are entitled to such benefits if their disability prevents them from engaging in "any gainful activity." 42 U.S.C. § 423(d)(2)(B). In order to test the disability of a widow, the Secretary matches the widow's maladies against a list of injuries and illnesses (commonly known as the "listings") in order to determine if the malady is sufficiently crippling. *See* 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A) (1990). If the widow's affliction is not listed (or if she has multiple and cumulative problems), then the widow is required to meet the level of disability for the listed disease that most closely matches the widow's illness. 20 C.F.R. § 404.1526(a). If the widow fails to meet those criteria, then she is denied benefits without any further inquiry. We find that this denial of a fuller investigation conflicts with *Zebley,* in that a widow is entitled to an individual assessment of whether her particular maladies prevent her from pursuing "any gainful activity," but *only* when the widow does not have a singular affliction that fails to meet the standards of a disability that is listed by the Secretary. In the case at bar, because the widow's health problems did not fit under any one listed disability, she was entitled to an individual assessment, and thus we remand this case for further consideration.

## I.

This is not the first time we have considered the appellant's case. The appellant is 60 years old and was widowed in February of 1984. She had a tenth grade edu-

---

1. The Social Security Act provisions and the regulations promulgated thereto actually address widows, surviving divorced wives, widowers, and surviving divorced widowers. *See, e.g.,* 42 U.S.C. § 423(d)(2)(A) and (B). For simplicity's sake, we shall refer to this group collectively as "widows."

cation, and last worked in 1979 as a dietary clerk. She was apparently suffering from numerous medical problems: (1) back problems that are apparently arthritic, (2) thyroid disease, (3) hypertension, and (4) bouts of congestive heart failure. Because of these problems, she filed an application for benefits in March of 1984, claiming that they prevented her from working. The Secretary denied her application, and she appealed that decision to the district court pursuant to 42 U.S.C. § 405(g). The district court held that a determination was needed regarding whether Bennett's various ailments equalled a listing and remanded the case so that a designated physician could perform that inquiry. Dr. Joel Carl Mulhauser examined Bennett, and determined that none of her impairments equalled the listings' standards for disability. Based upon this report, an Administrative Law Judge recommended that Bennett be denied benefits, and this was upheld on review by the Appeals Council. Bennett then appealed this decision to the district court. Both parties filed motions for summary judgment, and the district court granted the Secretary's motion. Bennett then appealed to this court, and we affirmed the district court's decision in an unpublished opinion. *Bennett v. Sullivan*, 900 F.2d 249 (4th Cir.1990). Later that month, the Supreme Court handed down its decision in *Zebley*, and Bennett asked this court to rehear her case in light of that decision. We agreed to rehear the case, and we now remand it for further consideration.

## II.

In order to understand the nature of the appellant's challenge, we must first outline the current system for evaluating disabilities. There are three different standards for disability: one for working adults, one for children and one for widows. Under the Social Security Act, a widow is entitled to disability benefits if her disability is "sufficient to preclude an individual from engaging in *any gainful activity*" pursuant to "regulations prescribed by the Secretary." 42 U.S.C. § 423(d)(2)(B) (emphasis added). A lower standard for eligibility is set for working individuals and children. They are disabled if they cannot "engage in any other kind of *substantial gainful work* which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A) (emphasis added). Since children usually do not work, they are compared to adults by determining if they have any "medically determinable physical or mental impairment *of comparable severity.*" 42 U.S.C. § 1382c(a)(3)(A) (emphasis added). "In plain words ... a child is entitled to benefits if his impairment is as severe as one that would prevent an adult from working." *Zebley*, 110 S.Ct. at 890.

Pursuant to the Secretary's authority under 42 U.S.C. § 423(d)(2), he has created a regulatory scheme for determining whether an individual is disabled. To some extent, this test is used for workers, widows and children, although each has a different standard for disability under the Act. The test is composed of a five-step analysis. At each step, the claimant must meet a certain standard. If the claimant fails to meet that standard, then that person is denied benefits. If the claimant meets that standard, then the analysis proceeds to the next step. If all of the relevant steps are satisfied, then claimant may receive benefits. 20 C.F.R. § 404.1520(a) (1990). The first three steps apply to all three groups, and then the test for each diverges.

The first step determines whether the claimant is engaged in "substantial gainful activity." If the claimant is working, benefits are denied. The second step determines if the claimant is "severely" disabled. If not, benefits are denied. If the claimant is "severely" disabled, then the Secretary determines whether that disability is one that is addressed in the Secretary's listings, and if not, if the disability is "at least equal in severity and duration" as a listed disability. These listings purport to measure whether the claimant is capable of engaging in "*any* gainful activity," which is the higher standard set for widow's disability, and higher than the "substantial gainful work" standard for workers and children.

The "listings" is a catalog of various disabilities, which are defined by "specific medical signs, symptoms, or laboratory test results." 110 S.Ct. at 891. In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing. *Id.*, 20 C.F.R. § 404.1526(a). However, common sense and experience have shown that not everybody who is disabled becomes that way merely because of a singular medical problem. Instead, sometimes a combination of disabilities will cripple someone when none of the individual disabilities acting alone would have had such a disastrous effect. This is where the Secretary's regulations have a great potential for allowing truly disabled people to fall through the cracks. When a person claims a disability that is not contained in the listings, or a combination of disabilities, the Secretary requires that the claimant demonstrate his disability, or that the combination of his disabilities, "medically equal" a listed impairment. 20 C.F.R. § 404.1526(a). In other words, regardless of whatever is affecting the claimant, he must demonstrate that his "specific medical signs, symptoms, or laboratory test results" equal those for a disability that happens to be listed.

There are further steps in the evaluation process that prevent workers from falling through the cracks. Under steps four and five, which only apply to workers, a claimant has the opportunity to demonstrate that his afflictions do prevent him from working. 20 C.F.R. § 416.920(e) and (f). However, this alternate ground is not available to children and widows. Unlike workers, they do not have the opportunity to argue that they are truly disabled even though they do not meet the specific criteria for at least one listed disability.

For children, this problem was addressed in *Zebley*. For two reasons, the Supreme Court determined that the Secretary's regulations fail to follow the statutory language of the Social Security Act. One of those two reasons is equally applicable to widows, and we remand this case for that reason.

The first problem found by the Court with the Secretary's regulations does not concern this case. The Court noted that the listings set a higher standard for children's disabilities than was set forth in the Act. The listings are calibrated to identify only those people whose disabilities are so severe that they cannot follow "*any*" gainful activity." Yet, the Act entitles children to benefits if they satisfy a lower threshold: their disability only has to be as severe as a disability that would prevent a worker from engaging in "*substantial gainful activity.*" "Any" is a higher standard than "substantial." Because the regulations failed to address children who fell in the gap between the statutory standard and the higher listings standard, they failed to carry out the Act's requirements. 110 S.Ct. at 894–95.

The second problem identified by the Court goes to the heart of this case. The Court held that the requirement that a child's maladies equal all of the criteria for at least one listing was incomplete, because all of the possible ways in which a child could become disabled could not be fit into a limited number of disability boxes that are specifically designed with particular afflictions in mind:

> Even if the listings were set at the same level of severity as the statute, and expanded to cover many more childhood impairments, *no* set of listings could ensure that child claimants would receive benefits whenever their impairments are of "comparable severity" to ones that would qualify an adult for benefits under the individualized, functional analysis contemplated by the statute and provided to adults by the Secretary. No decision process restricted to comparing claimants' medical evidence to a fixed, finite set of medical criteria can respond adequately to the infinite variety of medical conditions and combinations thereof, the varying impact of such conditions due to the claimant's individual characteristics, and the constant evolution of medical diagnostic techniques.

110 S.Ct. at 896 (emphasis in the original). The Court went on to reject the argument that the Secretary was incapable of creat-

ing a functional analysis that would determine if children were disabled even though they did not satisfy a particular disability listing.

This second reason in *Zebley* for finding that the regulations are inadequate for identifying compensable disabilities in children compels us to find that the regulations are also inadequate in regard to widows. In both instances, the regulations fail to take into account the almost infinite number and combination of ways in which a person can become disabled. The regulations just accommodate the scope of the Social Security Act. The Act entitles a widow to benefits if she cannot conduct "*any* gainful activity." There is no further statutory language stating that a widow is disabled *only* if she suffers from one of a limited list of disabilities. Yet, the regulations have exactly that effect. Accordingly, given the rationale of *Zebley*, we have no choice but to find that the regulations are inadequate.

We recognize that our decision may create a regulatory nightmare for the Secretary. Ideally, the Secretary would be able to design a regulatory scheme that objectively evaluates every claim of disability by the same yardstick. Such a regulatory scheme would be laudable if it treated all people by the same standard and if it were easy for everyone to understand. Under the case-by-case approach mandated by *Zebley*, the system will encourage the parties to amass a sea of often contradictory medical opinions in hopes of "out-experting" the other side in regards to that final question of individual disability. This does not mean that we do not appreciate the individual nature of many maladies. It also does not mean that we have a solution to this problem which we could adopt if we were not constrained by our judicial (as opposed to legislative) role. It means the system and claimants would benefit if the Congress and the Secretary could work out a system that takes into account the concerns expressed in *Zebley* and the need for an objective system that provides a quick and economical analysis.

We must also emphasize that our decision is limited. As the Supreme Court noted in *Zebley*, the Secretary's regulations will be upheld unless they exceed the grant of rulemaking authority from Congress or if they are arbitrary or capricious. 110 S.Ct. at 890. We have *not* held that the Secretary may not ordinarily require a claimant to meet a listing requirement for a particular disability if the claimant suffers only from that disability. The statute did not prohibit the Secretary from setting objective criteria for disability determinations. The regulations only fail when a widow claims that a combination of maladies is disabling even though no individual ailment mentioned in the listings, standing alone, would suffice.

Accordingly, we remand this case for a determination of whether Mrs. Bennett's various afflictions, taken together, prevent her from participating in "any gainful activity."

REMANDED WITH INSTRUCTIONS.