Marilyn **FINKELSTEIN**, Appellee,

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellant.**

No. 88–5318.

United States Court of Appeals, Third Circuit.

Argued Sept. 8, 1988.

Decided March 3, 1989.

Certiorari Granted Jan. 22, 1990.

On Remand from the Supreme Court of the United States June 18, 1990.

Argued on Remand from the Supreme Court Nov. 15, 1990.

Decided Jan. 23, 1991.

484

Robert M. Loeb (argued), Atty., Appellate Staff, Civil Div., U.S. Dept. of Justice, Washington, D.C., for appellant.

Linda C. Goldstein (argued), Howard, Darby & Levin, New York City, for appellee.

Catherine C. Carr, Steven Masters, and James M. Lafferty, Meris L. Bergquist, Community Legal Services, Inc., Philadelphia, Pa., for amici curiae Class Members in *Bozzi v. Sullivan*, No. 90–2580 (E.D.Pa.) in support of appellee.

Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

This case comes before us on remand from the Supreme Court, after it reversed our earlier judgment holding that we lacked appellate jurisdiction over the Secretary of Health and Human Services' (Secretary's) appeal from a district court order remanding Marilyn Finkelstein's (Finkelstein's) claim to the Secretary for reconsideration of his refusal to grant her widows' benefits under the Social Security Act. *See Sullivan v. Finkelstein,* — U.S. —, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), *rev'g Finkelstein v. Bowen,* 869 F.2d 215 (3d Cir.1989). Accordingly, we must now decide the merits of the Secretary's appeal.

### I.

The Social Security Act, 42 U.S.C.A. §§ 301–1397e (West 1983 & Supp.1990), provides that widows[1] shall not be determined to be under a disability unless they are unable to perform "any gainful activity," 42 U.S.C.A. § 423(d)(2)(B).[2] Here, we

---

1. Under the Social Security Act, widows, widowers and surviving divorced spouses are treated alike. *See* 42 U.S.C.A. § 423(d)(2)(B). For convenience, we shall refer to them collectively as "widows."

2. The parties to this appeal report that on October 27, 1990, Congress approved a bill, which has since become law, providing that for widows' benefits applications filed after or pending on January 1, 1991, the disability standard applicable to widows will be the same as that now

must decide whether the Secretary may determine that widows do not qualify for widows' benefits under the Act without ever considering their residual functional capacity (RFC) to perform any gainful activity.

In the order up for review, the district court held that the Secretary could not deny Finkelstein's application for widows' benefits without making "findings regarding the functional impact of [her] ailment." *See* Appellant's Appendix (App.) at 30. For the reasons discussed below, we hold that the Secretary exceeded his statutory authority under 42 U.S.C.A. § 423(d)(2)(B) when he adopted a regulatory scheme that denies widows' benefits to widows who so lack residual functional capacity that they are unable to perform "any gainful activity." We will therefore affirm the district court's order remanding Finkelstein's application for widows' benefits to the Secretary with directions that he evaluate the functional impact of her disabilities.

## II.

Finkelstein is the widow of a wage earner who died while fully insured under the Social Security Disability Insurance program, found at Title II of the Social Security Act. She first applied for widows' benefits at the age of fifty in January of 1981, shortly after the death of her husband on November 27, 1980. The Secretary found that she could not perform any gainful activity and awarded her widows' benefits. However, Finkelstein lost her entitlement to widows' benefits in December of 1982 when she remarried. Under the law as it stood at that time, widows who remarried before age sixty no longer qualified for widows' benefits.

In March of 1983, Congress enacted a law that restored benefits to remarried widows. Finkelstein reapplied for widows' benefits in November of 1983 in order to receive them once the new law took effect. In reviewing Finkelstein's second applica-

tion, the Secretary subjected her to a *de novo* disability determination.

On September 12, 1984, Finkelstein's application for widows' benefits was the subject of a hearing before an Administrative Law Judge (ALJ). *See* Administrative Record (A.R.) at 16. At the hearing, Finkelstein testified that she suffers severe chest pain three to four times per week. *See id.* at 29. She stated that she can only walk half a block before experiencing pain that she described as a tightness in her chest. *See id.* at 30, 41. She further testified that she is confined to the first floor of her apartment, *see id.* at 34, and that she relies upon her husband and her daughter to do virtually all of the work at home, *see id.* at 40. Finkelstein also introduced medical evidence at the hearing. *See id.* at 19. The medical evidence included doctors' opinions that she suffers from two heart ailments: myocardial ischemia and mitral valve prolapse.

The ALJ denied Finkelstein's reapplication for widows' benefits in a written decision dated September 28, 1984. *See id.* at 10–13. In accord with the regulatory practice the Secretary has prescribed for evaluating a widow's application for benefits, the ALJ compared Finkelstein's medical condition to a list of 125 listed physical and mental illnesses and abnormalities that the regulations presume prevent a person from engaging in any gainful activity. In Finkelstein's case, the ALJ focussed his comparison upon listing 4.04, entitled "Ischemic Heart Disease." *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (Part A), § 4.04.

The ALJ held that Finkelstein's impairments did not match the requirements contained in the listing for Ischemic Heart Disease. Further, the ALJ held that her impairments did not equal listing 4.04 because her condition did not present medical findings equal in severity to all the criteria contained in listing 4.04. The ALJ then noted that Finkelstein failed to match or equal any of the remaining 124 listings.

applicable to wage earners, namely "inability to perform substantial gainful activity." Thus, for the future Congress has eliminated the problem we address in this appeal. However, the parties

agree that this new law does not affect the particular application for widows' benefits that is at issue here.

*See* A.R. at 12. As a result, the ALJ denied Finkelstein's application for widows' benefits without considering whether her residual functional capacity nevertheless rendered her unable to perform any gainful activity. Finkelstein then requested review of the ALJ's decision from the Social Security Administration's Appeals Council. The Appeals Council denied the request for review, leaving the ALJ's decision as the Secretary's final decision upon her claim. *See id.* at 3.

On January 22, 1985, Finkelstein filed suit in the United States District Court for the District of New Jersey. In her complaint, she asked the district court either to "award appropriate benefits" or "to remand this matter to the Secretary for additional hearing." App. at 4. On February 16, 1988, the district court issued its order and a memorandum opinion. The district court affirmed the Secretary's determination that Finkelstein's condition did not match or equal the listing for Ischemic Heart Disease.[3] However, the district court ordered Finkelstein's case remanded to the Secretary for a determination of "the functional impact of [her] ailment." *Id.* at 30.

The Secretary filed a timely notice of appeal. Relying on a number of our Court's prior decisions, we held that the district court's remand order was "not final for purposes of appellate review." *See Finkelstein v. Bowen,* 869 F.2d 215, 216 (3d Cir.1989), *rev'd sub nom. Sullivan v. Finkelstein,* — U.S. —, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). We thus ordered that the Secretary's appeal be dismissed for lack of appellate jurisdiction. *See id.* at 220. The Secretary filed a petition for a writ of *certiorari* with the Supreme Court. The Supreme Court granted the writ and reversed our earlier decision. The Supreme Court held that the district court's order remanding Finkelstein's case to the Secretary was a final decision under 28 U.S.C.A. § 1291 (West Supp.1990). *See Finkelstein,* 110 S.Ct. at 2661. This appeal is now before us on remand from the Su-

preme Court so that we may address the merits of the Secretary's appeal.

### III.

The district court had jurisdiction over Finkelstein's complaint pursuant to 42 U.S.C.A. § 405(g) (West 1983). We have appellate jurisdiction over the Secretary's appeal pursuant to 28 U.S.C.A. § 1291.

On this remand, we must determine whether the district court erred as a matter of law when it "essentially invalidated, as inconsistent with the Social Security Act, the Secretary's regulations restricting spouses' disability insurance benefits to those claimants who can show that they have impairments" that match or equal one of the Secretary's 125 listed impairments. *Finkelstein,* 110 S.Ct. at 2663. As a result, our scope of review is plenary. *See International Union, UMWA v. Racho Trucking Co.,* 897 F.2d 1248, 1252 (3d Cir. 1990) (question of law is subject to plenary review).

This appeal focuses upon the regulatory scheme the Secretary follows in determining whether to award widows' benefits. As the Supreme Court stated in *Sullivan v. Zebley,* — U.S. —, 110 S.Ct. 885, 890, 107 L.Ed.2d 967 (1990) (citation and internal quotations omitted), "[s]ince the Social Security Act expressly grants the Secretary rulemaking power, our review is limited to determining whether the regulations promulgated exceed the Secretary's statutory authority and whether they are arbitrary and capricious."

### IV.

#### A.

In 1968, Congress added to the Social Security Act a provision granting benefits to widows on account of their deceased spouses' payments into the social security fund. *See* 42 U.S.C.A. § 423(d)(2)(B). However, Congress set a more stringent

---

**3.** Finkelstein has not appealed from the district court's finding that substantial evidence supported the Secretary's determination that her

condition, prior to consideration of her functional capacity, did not match or equal any listed impairment.

standard for widows than for wage earners who sought disability benefits.

For wage earners, the statute provides:

An individual (except a widow, surviving divorced wife, widower, or surviving divorced husband ...) shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

*Id.* § 423(d)(2)(A).

For widows, the statute provides:

A widow, surviving divorced wife, widower, or surviving divorced husband shall not be determined to be under a disability ... unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity.

*Id.* § 423(d)(2)(B).

As a comparison of these two sections makes clear, wage earners are entitled to disability benefits if they are unable to perform *substantial* gainful activity, while widows are entitled to widows' benefits only if they are unable to perform *any* gainful activity.

For wage earners, the Secretary has adopted a five step procedure for determining whether a disability claimant is unable to perform substantial gainful activity. The Supreme Court explained the operation of this five step process in *Zebley*, 110 S.Ct. at 888–89 (citations omitted):

The first two steps involve threshold determinations that the claimant is not working, and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is "equal" to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

For wage earners, the listings at step three of the sequential evaluation process provide a convenient way for the Secretary to determine which claimants are *per se* incapable of performing *any* gainful activity. However, wage earners are entitled to disability benefits so long as they are unable to perform substantial gainful activity. Thus, if a wage earner fails to match or equal a listing at step three the Secretary will then examine the wage earner's residual functional capacity, age, education and work experience to see if in fact the claimant's impairment keeps him from performing substantial gainful activity. The Secretary has defined residual functional capacity as "what [a claimant] can still do despite [the physical and mental] limitations [his impairments cause]." *See* 20 C.F.R. § 404.1545(a) (1990).

For widows, however, the final two steps of the Secretary's five step evaluation process are eliminated. Thus, persons who apply for widows' benefits must match or equal one of the Secretary's listed impairments at step three of the sequential evaluation process or their application for benefits will be denied. The Secretary's regulations explain his procedure for evaluating claims for widows' benefits. One regulation, entitled "Disability defined for widows, widowers, and surviving divorced spouses," states:

To be entitled to a widow's or widower's benefit as a disabled widow, widower or surviving divorced spouse, the law provides that you must have a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less

than 12 months. The impairments must be of a level of severity to prevent a person from doing any gainful activity. To determine whether you are disabled, we consider only your physical or mental impairment. We do not consider your age, education and work experience.

20 C.F.R. § 404.1577 (1990). Another regulation, entitled "How we determine disability for widows, widowers, and surviving divorced spouses," states:

(a) We will find that you are disabled and pay you widow's or widower's benefits as a widow, widower, or surviving divorced spouse if—

(a)(1) Your impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any impairment shown there;

(a)(2) Your impairment(s) meets the duration requirement.

(b) However, even, if you meet the requirements in paragraphs (a)(1) and (2) of this section, we will not find you disabled if you are doing substantial gainful activity.

20 C.F.R. § 404.1578 (1990).

Finally, in Social Security Ruling 83–19, the Secretary states:

The "level of severity" of impairments in the listing is not defined in terms of the residual functional capacity (RFC) of the individual. When certain functional limitations *are* specified for a listed impairment, they relate only to the degree of dysfunction for that particular listing and only to the specific function identified....

....

As in determining whether the listing is met, it is incorrect to consider whether the listing is equaled on the basis of *overall* functional impairment....

... The functional consequences of the impairments (i.e., RFC), irrespective of their nature or extent, *cannot* justify a determination of equivalence.

Social Security Rul. 83–19, Social Sec. Rep. Serv. 90, 91–93 (West Supp.1989).[4] Social Security Rulings "are binding on all components of the [Social Security] Administration." *Zebley*, 110 S.Ct. at 891 n. 9.

### B.

The Secretary argues on appeal that the district court erred as a matter of law when it ordered the Secretary to evaluate Finkelstein's residual functional capacity before deciding whether she was unable to perform any gainful activity. While we have on occasion considered whether substantial evidence supported the Secretary's denial of widows' benefits in a particular case, *see, e.g., Smith v. Schweiker*, 671 F.2d 789 (3d Cir.1982), we have never addressed the issue of whether the Secretary's regulatory scheme construing the section of the Social Security Act that provides for widows' benefits, 42 U.S.C.A. § 423(d)(2)(B), runs afoul of the statutory authority or whether his regulations are arbitrary and capricious, *see In re Sullivan*, 904 F.2d 826, 839 n. 12 (3d Cir.1990).

▮ An examination of 42 U.S.C.A. § 423(d)(2)(B) shows that Congress intended the Secretary to prescribe regulations that deemed widows disabled only if their ailments had reached a level of severity at which their physical or mental impairment or impairments prevented them from engaging in any gainful activity. A comparison of that standard with the wage earners' disability standard found in 42 U.S.C.A. § 423(d)(2)(A) also demonstrates that Congress did not intend the Secretary to consider a widow's age, education or work experience in determining whether she is able to perform any gainful activity. Instead, Congress limited a widow's disability inquiry solely to medical factors.

**4.** The Secretary has rescinded Ruling 83–19 in the aftermath of the Supreme Court's decision in *Zebley*, which struck down the Secretary's regulatory scheme for awarding disability benefits to children. However, the Secretary has stated that "[t]his rescission does not reflect a change in the spousal disability program." *See* Brief of *Amici Curiae*, Exhibit A at 1 (quoting Secretary's letter to United States Court of Appeals for the Sixth Circuit in *Edmond v. Secretary, HHS*, No. 89–3161 (pending)).

In implementing the statute Congress enacted to provide for widows' benefits, the Secretary has closely limited the kinds of medical evidence he will consider in determining whether a widow is able to perform any gainful activity. However, the Secretary's own regulations state that residual functional capacity is a medical factor. *See* 20 C.F.R. § 404.1545(a) (1990) ("Residual functional capacity is a medical assessment."); 45 Fed.Reg 55,566 (1980) ("Anyone qualified to make medical judgments may assess residual functional capacity."). Congress did instruct the Secretary to consider only medical factors in deciding whether to award widows' benefits; however, it did not suggest that the Secretary should restrict the types of medical evidence that could be considered in determining whether a widow equaled the level of severity that the Secretary deemed sufficient to preclude a claimant from performing any gainful activity.

█ Here, the district court had before it evidence that Finkelstein suffered from a combination of impairments that, according to her doctors, either prevented her from performing any physical activity or resulted in a marked limitation of physical activity. *See* A.R. at 135, 139. Where evidence exists that a widow is in fact unable to perform any gainful activity and yet the widow's impairment or impairments neither matches nor equals the admittedly incomplete list of 125 impairments that the Secretary deems sufficient to preclude any gainful activity, we hold that the Secretary must medically evaluate the widow's residual functional capacity to determine whether her condition, considering in combination all her medically substantiated ailments and impairments, equals the level of severity of one of the Secretary's listed impairments. If so, the Secretary must award benefits to that widow since she meets the standard Congress set of a person who, based upon medical considerations alone, is unable to perform any gainful activity.

### C.

Our holding is in accord with the decisions of the six other courts of appeals that have dealt with this issue. The most recent case to have held in favor of an argument similar to the one Finkelstein advances here is *Bennett v. Sullivan,* 917 F.2d 157 (4th Cir.1990). In *Bennett,* the court held that when a widow claims to have a combination of maladies that prevents her from performing any gainful activity, even though no individual ailment qualifies her for benefits under the listings, the Secretary must examine whether the widow's residual capacity permits her to perform any gainful activity. *Id.* at 161. The court reasoned that Congress, in the Social Security Act, did not limit benefits to just those widows who suffered from one of the 125 disabilities included in the Secretary's listings; instead, the court wrote that "[t]he Act entitles a widow to benefits if she cannot perform *'any* gainful activity.'" *Id.* Thus, the court stated that the Secretary's regulations concerning widows' benefits were "inadequate." *Id.*

In *Davidson v. Secretary, HHS,* 912 F.2d 1246, 1253 (10th Cir.1990) (per curiam), the court noted that "the Secretary, in limiting analysis to the listings, has also eliminated any medically documented residual functional capacity analysis." The court continued:

> We find no justification for such elimination. If the widow's disability benefits claimant is severely disabled but does not meet or equal a description contained in the listings, the Secretary must necessarily consider the residual functional capacity implications of the claimant's medical condition to determine whether she meets the core statutory test of being unable to participate in "any gainful activity."

*Id.* at 1253–54. Thus, the court held "that the Secretary's regulations setting forth the factors to be considered in analysis of the impairments of a claimant for disabled widow's benefits are 'manifestly contrary to the statute,' *Chevron [U.S.A., Inc. v. Natural Resources Defense Council],* 467 U.S. [837,] 844 [104 S.Ct. 2778, 2782, 81 L.Ed.2d 694] [ (1984) ], and exceed the Secretary's statutory authority." *Id.* at 1254.

In *Ruff v. Sullivan,* 907 F.2d 915, 919 (9th Cir.1990), the court held that "residual

functional capacity must be considered in determining whether a disabling physical or mental condition is the medical equivalent of a listed impairment." The court explained:

> The Secretary's position, that it is not necessary to consider residual functional capacity in determining whether a claimant is entitled to benefits, conflicts with the Congressional mandate that surviving spouses precluded from engaging in gainful activity because of a disabling physical or mental condition should receive benefits. We also agree with the Second Circuit's conclusion [in *Kier v. Sullivan*, 888 F.2d 244, 247 (2d Cir. 1989),] that "[i]f a claimant's residual functional capacity leaves her unable to perform any gainful activity, her impairments, even if unlisted, must be at the level of severity of an impairment included in the Secretary's Listing."

*Ruff*, 907 F.2d at 919 (citations omitted).

In *Cassas v. Secretary, HHS*, 893 F.2d 454, 458 (1st Cir.1990) (footnote omitted), the court adopted the approach of the United States Court of Appeals for the Second Circuit in *Kier* and agreed that:

> the Secretary's position to the effect that RFC is not to be assessed in determining whether a widow with a non-listed impairment is disabled conflicts with the directive of 42 U.S.C.A. §§ 402(e) and 423(d)(2)(B) that widows whose impairments preclude any gainful activity are entitled to benefits.

Thus, the court in *Cassas* held that "residual functional capacity cannot be ignored in considering medical equivalence and, ultimately, disability." *Id.*

In *Kier v. Sullivan*, 888 F.2d 244, 247 (2d Cir.1989), the court noted that residual

functional capacity is a medical factor and that the Secretary's failure to consider it in connection with widows' benefits claims "conflicts with the language of [42 U.S.C.A. § 423(d)(2)(B)]." The court wrote:

> The Act specifies that all widows with impairments at a "level of severity ... sufficient to preclude an individual from engaging in any gainful activity" are entitled to benefits. 42 U.S.C. § 423(d)(2)(B). Under the Act, the Secretary is authorized to promulgate a Listing of Impairments to establish the level of severity deemed sufficient to preclude an individual from engaging in gainful activity. This underinclusive catalog of impairments only establishes the level of severity necessary to demonstrate disability, rather than comprises the entire universe of available claims. If a claimant's residual functional capacity leaves her unable to perform any gainful activity, her impairments, even if unlisted, must be at the level of severity of an impairment included in the Secretary's Listing.

*Id.*

Finally, in *Paris v. Schweiker*, 674 F.2d 707, 709–10 (8th Cir.1982), the court held that a widow who conceded that no listed impairment of hers matched or equalled a listed impairment was nevertheless entitled to widows' benefits since, considered as a whole, her combined impairments rendered her incapable of performing any gainful activity. While the court did not expressly invalidate the Secretary's regulations concerning widows' benefits, the court did grant such benefits to a widow who did not qualify for them under the Secretary's regulatory scheme.[5]

Our holding is in accord with these decisions. To repeat: where evidence exists

---

**5.** Challenges to the Secretary's regulatory scheme for awarding widows' benefits are currently pending in the United States Courts of Appeals for the Sixth and Seventh Circuits. *See Edmond v. Secretary, HHS*, No. 89–3161 (6th Cir.); *Marcus v. Sullivan*, No. 89–2717 (7th Cir.).

   The Sixth Circuit has upheld the Secretary's scheme for awarding widows' benefits in an appeal that challenged whether the Secretary's denial of such benefits was based upon substantial evidence. *See, Dorton v. Heckler*, 789 F.2d

363 (6th Cir.1986) (per curiam). While *Dorton* did not raise the issue of whether the Secretary's regulations exceeded his statutory authority or were arbitrary and capricious, the court did state that it could not "rely upon the evidence in the record which indicates that [Dorton's] physical impairments when taken together are sufficiently severe to prevent her from engaging in any gainful activity." *Id.* at 367. Even if we were to agree that the Sixth Circuit seems poised to uphold the Secretary's regulatory

that a widow is in fact unable to perform any gainful activity and yet the widow's impairment, or impairments, neither matches nor equals the Secretary's admittedly incomplete list of 125 impairments that the Secretary deems sufficient to preclude any gainful activity, we hold that the Secretary must evaluate the widow's residual functional capacity to determine whether her condition equals the level of severity of one of the Secretary's listed impairments. If so, the Secretary must award benefits to that widow since she meets the standard Congress set of a person who, based upon medical considerations alone, is unable to perform any gainful activity.

### V.

We hold that the scheme the Secretary has applied in determining whether to award widows' benefits exceeds his statutory authority. Therefore, we will affirm the district court's order remanding Finkelstein's application for widows' benefits to the Secretary with directions that he evaluate the functional impact of her disabilities.

scheme for awarding widows' benefits, we note that the Ninth Circuit was able to distinguish a case somewhat similar to *Dorton, see Willeford v. Secretary, HHS,* 824 F.2d 771, 773–74 (9th Cir.1987) (Kennedy, J.), when in *Ruff v. Sullivan,* 907 F.2d 915 (9th Cir.1990), it required that the Secretary amend his regulatory scheme for widows' benefits to include consideration of residual functional capacity.