Subhash BAXI, Claimant–Appellant,

v.

UNITED TECHNOLOGIES AUTOMOTIVE, Employer– Respondent.

No. 71597.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 7, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 24, 1997.

Application to Transfer Denied Dec. 23, 1997.

Thomas J. Gregory, Mogab & Hughes, St. Louis, for claimant-appellant.

Edward M. Vokoun, Evans & Dixon, St. Louis, for employer-respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

In this workers' compensation case, Subhash Baxi (Claimant) appeals from that part of the final award of the Labor and Industrial Relations Commission (Commission) modifying the award of the Administrative Law Judge (ALJ) and awarding Claimant permanent partial disability. Claimant asserts that the Commission erred in making its award because 1) the award was not supported by competent and substantial evidence and was contrary to the overwhelming weight of the evidence; 2) the Commission applied the incorrect test for permanent total disability; 3) the Commission failed to explain its reasons for its credibility determinations; and 4) the Commission's termination of Claimant's temporary disability benefits on February 3, 1992, was arbitrary. We reverse and remand.

Claimant is a middle-aged man of slight build. He is originally from India and holds a Bachelor of Science degree in Chemistry and two Master's Degrees, one in Organic Chemistry and the other in Polymer Science. Claimant began working for United Technologies Automotive (Employer) in March, 1984, as an assistant chemist, mixing and cutting rubber. Claimant remained there until he was injured on January 9, 1985. While taking a sample of rubber out of a mixer, the mixer caught Claimant's left hand, crushing and partially severing it. The injury to his hand required extensive reconstruction, including the reattachment of several fingers and his thumb. However, the surgery to reattach his thumb was unsuccessful. Claimant then returned to work for Employer at a desk job on May 12, 1985, and remained there until his position was eliminated on January 31, 1987, and Employer laid off Claimant. Claimant has not worked since this date.

Claimant filed a claim with the Division of Workers' Compensation for both physical and mental disabilities resulting from the accident.[1] Claimant appeared before the ALJ who found Claimant not competent and requested Claimant's attorney obtain a psychiatric evaluation of Claimant. The psychiatrist who examined Claimant, Dr. Parwatikar, found Claimant was not competent to understand the nature of the workers' compensation proceedings and would not be capable of participating as a witness. Based upon these recommendations, the ALJ suggested that a guardian ad litem be appointed for Claimant and the circuit court appointed a Next Friend. The first hearing was declared a mistrial and de novo proceedings commenced before another ALJ.

By the second hearing, however, Claimant was able to testify before the ALJ. His family and he testified that Claimant spends most of his time in seclusion, is preoccupied with elevating his hand to ease the pain, and is constantly watched over by his family who can never leave him alone. Depositions from certified psychiatrists who examined Claimant were also offered as evidence of Claimant's mental impairment. A brief chronological history of their conclusions is as follows: On July, 10, 1987, Dr. Dowell examined Claimant and diagnosed him with major de-

---

1. Neither party contests the Commission's award as to Claimant's physical injury.

pression. Dr. Dowell also found Claimant appeared psychomotor retarded[2] and had a disheveled appearance. Dr. Stillings saw Claimant on September 1, 1987, and found Claimant showed some psychomotor retardation. He diagnosed Claimant with major depression. Dr. Stillings saw Claimant again on October 31, 1990, and November 5, 1990, and while he concluded that Claimant's depression had not improved, he thought Claimant exaggerated his symptoms. On November 5, 1991, Dr. Stillings examined Claimant and found, for the first time, no evidence of psychomotor retardation, which indicated to Dr. Stillings that Claimant had made a strong recovery from the depression. Dr. Stillings concluded that Claimant's depression was stable, controlled and at a lower level and gave Claimant a disability rating of 5%. Dr. Finn examined Claimant on December 20, 1991, and found Claimant to have major depression with melancholia. He gave Claimant a disability rating of 100%. Dr. Dowell examined Claimant a second time on July 23, 1992, and found Claimant appeared more disheveled and more psychomotor retarded than when he first examined Claimant. He diagnosed Claimant with major depression with a psychotic component and gave claimant a disability rating of 100%.

Based on the depositions and testimony, the ALJ found Claimant temporarily and totally disabled due to the mental impairment and entitled to temporary total disability benefits. Because Claimant had failed to undergo treatment for his psychological impairment, the ALJ conditioned the temporary award on Claimant receiving medical and psychological treatment within one year of the award. However, after the expiration of that year, the ALJ found Claimant had failed to obtain such treatment and entered a final award terminating the temporary disability benefits and awarding permanent total disability benefits of $222.73 per week for the life of Claimant.

Both Claimant and Employer filed Applications for Review to the Commission. After a review of the evidence, the Commission modified the ALJ's award of permanent total

disability to 10% permanent partial disability to Claimant's body as a whole for depression. The Commission also found that Employer was due a credit for overpayment of temporary disability benefits. The Commission calculated that by the hearing, Employer had paid $108,231.89 in temporary total disability benefits to Claimant. The Commission found Employer had paid $222.73 per week for the periods of January 1, 1987 through June 26, 1987, and November 7, 1991 through February 3, 1992, which came to a total of $8,463.74. Adding this amount of temporary benefits to Employer's liability to Claimant for 100% permanent disability at the level of Claimant's wrist in the amount of $27,564.08 and Employer's liability for 10% permanent partial disability to Claimant's body as a whole resulting from the depression Claimant suffered following the accident in the amount of $5,727.60, and deducting the combined total from the money already awarded, the Commission found Employer entitled to a credit for overpayment of temporary total disability benefits in the amount of $66,476.47

Claimant raises four points on appeal, one of which we find dispositive. In his second point, Claimant argues the Commission applied the incorrect test for finding permanent total disability due to a mental impairment. Specifically, Claimant asserts the Commission erred in considering his age, education, and physical ability in its determination of Claimant's disability based on mental impairment. Claimant argues the proper test is whether, in light of his mental impairment, Claimant "is able to compete in the open labor market or return to any reasonable or normal employment."

When a decision of the Commission is appealed:

> [we] review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;

---

**2.** A psychiatrist explained in his deposition that psychomotor retardation is "a slowing down of the psychological and the cognitive processes and some slowing of motor function."

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495, RSMo 1994.[3]

■ Section 287.020.7 defines "total disability" as the "inability to return to any employment and not merely ... inability to return to the employment in which the employee was engaged at the time of the accident." The test for determining whether a claimant is permanently and totally disabled is whether:

> "given the claimant's situation and condition, he is competent to compete in the open market. The central question is whether in the ordinary course of business, an employer would reasonably be expected to hire the claimant in his present physical [or mental] condition reasonably expecting him to perform the work for which he is hired."

*Grgic v. P & G Construction*, 904 S.W.2d 464, 466 (Mo.App. E.D.1995) (*quoting Brown v. Treasurer of Missouri*, 795 S.W.2d 479, 483 (Mo.App. E.D.1990)); *See Wilhite v. Hurd*, 411 S.W.2d 72, 78 (Mo.1967).

■ In making its determination of whether a claimant is partially or totally disabled, the commission is not bound by the percentages of disability assigned to a claimant by the medical experts. *Sifferman v. Sears, Roebuck and Co.*, 906 S.W.2d 823, 826 (Mo.App. S.D.1995). Instead, the Commission may "find a disability rating higher or lower than that expressed in medical testimony." *Id.* This determination is a finding of fact within the special province of the commission, and we will not disturb such a finding even if we would have reached a different conclusion. *Id.* However, "[f]indings of ultimate facts reached through application of rules of law, rather than by natural reasoning based on facts alone, are conclusions of law." *Theresa Wiele v. National Super Markets, Inc.*, 948 S.W.2d 142 (Mo.App. E.D. 1997). These findings "fall within the appellate court's province of review and correction." *Vaught v. Vaughts, Incorporat-*

*ed/Southern Missouri Const.*, 938 S.W.2d 931, 943 (Mo.App. S.D.1997).

■ In issuing its final award, the Commission stated that the conclusions of the medical experts who found Claimant permanently and totally disabled due to the depression, were "incredible in light of claimant's age, education and physical ability." Claimant argues that the Commission is prohibited from considering these factors when the alleged impairment is mental or emotional as opposed to purely physical. We disagree. However, because we find that the Commission erred as a matter of law by misusing these factors in making its determination of disability, we cannot affirm the Commission's award.

The Commission stated the conclusions of the medical experts, that Claimant was permanently and totally disabled due to the depression, were "incredible in light of claimant's age, education and physical ability." In effect, by finding it "incredible" that a mental impairment could render a 51 year-old, well-educated, primarily physically fit claimant totally disabled, the Commission used these factors to negate the existence or extent of Claimant's mental impairment. Common sense tells us we cannot agree with this use of these factors.

■ Instead, the determination of a claimant's percentage of disability is a two-part inquiry. Only after an initial finding of a claimant's mental impairment may the Commission consider additional factors to determine the effect the impairment will have on a claimant's employability in the open labor market. But we reiterate, in no event may these additional factors be used to negate the existence or extent of the mental impairment.

The Secretary of Health and Human Services engages in a similar inquiry in awarding claimants disability benefits. *See Finkelstein v. Sullivan*, 924 F.2d 483 (3rd Cir.1991). However, instead of a two-part inquiry, the Secretary engages in a five-step process to determine whether a claimant is "unable to perform substantial gainful activity." *Id.* at

**3.** All statutory references are to RSMo 1994, unless otherwise noted.

487. In the first three steps, the Secretary determines whether claimant is working, the duration of the impairment and whether it "significantly limits his work," and whether the impairment is listed as an impairment "presumed severe enough to preclude any gainful work." *Id.* Only if a claimant's impairment is not a listed impairment, does the Secretary then consider "whether the claimant can do his own past work or any other work that exists in the national economy, in *view of his age, education, and work experience." Id.* (emphasis ours). The Secretary considers these factors in order to determine " 'what a claimant can still do despite the physical and mental limitations his impairments cause.' *See* 20 C.F.R. Sec. 404.1545(a) (1990)." *Id.* In effect, these factors are used to find a claimant disabled when the impairment alone does not qualify the claimant for benefits.

Because we find that the Commission failed to engage in a two-part inquiry, we must remand for a new determination of the extent of Claimant's disability as a result of his mental impairment. In so determining, the Commission must first determine the extent of Claimant's mental impairment and then determine how the mental impairment affects Claimant's ability to compete in the open labor market in light of such factors as his age, education, and physical abilities. On reconsideration, the Commission "may but it is not required to take such additional evidence as it believes will assist it" in making its award determination. *Minnick v. South Metro Fire Protection Dist.,* 926 S.W.2d 906, 912 (Mo.App. W.D.1996).

█ We must also address Employer's allegation that the Commission erred in its calculation of the credit due Employer for overpayment of temporary disability benefits. While we may correct mathematical errors made by the Commission, *Hautly Cheese Co. v. Wine Brokers, Inc.,* 706 S.W.2d 920, 923 (Mo.App. W.D.1986), we ask the Commission to clarify its award in light of the following considerations.

First, in calculating the credit owed Employer for overpayment of temporary disability benefits, the Commission allotted $8,463.74 to temporary disability payments for the time periods of January 1, 1987 through June 26, 1987, and November 7, 1991 through February 3, 1992. Employer calls our attention to the fact that the proper date should be January 31, 1987, instead of January 1, 1987, because as of January 1, Claimant was still working for Employer. We assume this was a mistake as the ALJ's award lists January 31 as the proper date. Second, we also find the award failed to indicate whether temporary total disability payments for the period of January 9, 1985 through May 12, 1985, the period immediately following Claimant's injury, were included in the calculation of the temporary disability award allowed Claimant.

In sum, the Commission's award of 10% permanent partial disability benefits is reversed and remanded so that the Commission may make a new determination of the extent of Claimant's disability in light of the standard outlined above. We also ask the Commission to issue its award in light of the considerations regarding its calculations.

SIMON and HOFF, JJ., concur.