**Marie BACON, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**Civ. A. No. 85–4685.**

United States District Court, D. New Jersey.

March 13, 1992.

Abromson & Carey, by Glenn B. Carey, Newark, N.J., for plaintiff.

Michael Chertoff, U.S. Atty. by Susan J. Steele, Special Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

BISSELL, District Judge.

This case involves an application for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). The defendant, the Secretary of Health and Human Services ("the Secretary"), maintains that the application should be denied because the plaintiff's motion was untimely.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff filed applications for Supplemental Security Income ("SSI") and disabled widow's insurance benefits. Following a final decision of the Secretary denying her claim, plaintiff commenced an action in the district court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). On March 23, 1988, this Court remanded the case to the Secretary for further administrative

proceedings. (Defendant's Br. at 1). On remand, following further proceedings, the Secretary entered a final decision dated December 20, 1989, denying plaintiff's applications. (*Id.*) Plaintiff reopened the matter before this Court.

On January 1, 1991, pursuant to the Omnibus Budget Reconciliation Act of 1990, the new standard for determining disabled widow's insurance benefits went into effect. (*See* 42 U.S.C. § 423(d) (no distinction between the standard for widow, surviving divorced wife, widower, or surviving divorced husband and the standard for wage earners)). In addition, on January 23, 1991, the Third Circuit invalidated the standard used by the Secretary for adjudicating disabled widow's claims. (*See Finkelstein v. Sullivan,* 924 F.2d 483 (3d Cir.1991)).

Thereafter, the Secretary re-examined his final decision in the instant matter and determined that further defense of the case in its present posture was untenable. (Defendant's Br. at 2). Therefore, with consent of the parties, this Court remanded the matter to the Secretary for: (1) the issuance of a decision finding plaintiff was disabled as of August 31, 1983, for the purpose of calculating Supplemental Security Income benefits, and as of January 1, 1991, for the purpose of calculating widow's benefits; and (2) further proceedings under *Finkelstein* to determine eligibility for disabled widow's benefits prior to January 1, 1991. On June 10, 1991, this consent order to remand was entered and the docket was marked closed.

On August 30, 1991, following remand, the Secretary entered a decision fully favorable to plaintiff with respect to both the SSI and disabled widow's claims. (Defendant's Br. at 2). The defendant submitted a proposed order of dismissal along with the final decision of the Secretary, as required by *Brown v. Secretary of Health and Human Services,* 747 F.2d 878 (3d

Cir.1984), which was received and signed by the Court on October 8, 1991.[1] Plaintiff then filed a motion for attorney's fees under the EAJA on October 14, 1991.

## II. DISCUSSION

It is the Secretary's position that, based on a recent Supreme Court case, *Melkonyan v. Sullivan,* —— U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), the plaintiff's application is untimely. It is the plaintiff's position that: (1) the time limit imposed by the EAJA is merely a statute of limitations and therefore subject to tolling, estoppel and other equitable doctrines; and (2) *Melkonyan* should not be applied retroactively in the present case.

### A. Timeliness of Application

The EAJA, 28 U.S.C. § 2412(d)(1)(A), provides that attorney's fees should be awarded to a "prevailing party," unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. The statute further provides that the party seeking an award of fees shall submit an application within thirty days of "final judgment" in the action. 28 U.S.C. § 2412(d)(1)(B).[2]

The plaintiff herein made her application four months after the consent order, forty-five days after the Secretary's final decision and six days after this Court dismissed the action. Thus, the running of the thirty-day limit depends on the construction of the words "prevailing party" and "final judgment."

Recently, the Supreme Court of the United States had the opportunity to address this problem. In *Melkonyan v. Sullivan,* —— U.S. ——, 111 S.Ct. 2157, the plaintiff applied for attorney's fees under the EAJA. The district court had entered a "judgment" remanding the matter to the

---

1. On October 11, 1991, after the order of dismissal had been signed by the Court, the plaintiff objected to the form of the order because it did not provide for time in which to file a notice of motion for an equal access to justice petition for fees. Despite such objection, plaintiff's application for fees was filed three days later.

2. This period can be as long as ninety days if an appealable district court judgment is involved. *See* 28 U.S.C. § 2412(d)(2)(G). That is not the case here; therefore, thirty days is the relevant time period.

Secretary for all further proceedings. (*Id.* 111 S.Ct. at 2160). Subsequently, the Appeals Council granted the petitioner all the relief he had requested. The issue was whether the "final judgment" for the purposes of EAJA was measured from the date of the district court remand or the date of the relief granted.

The Supreme Court stated that traditionally "final judgment" meant any decree or order from which an appeal lies. (*Id.* at 2161 (citing Fed.R.Civ.P. 54(a)). However, under § 2412(d)(2)(G), a "final judgment" is one that is "final and *not* appealable." (*Id.*, citing 28 U.S.C. § 2412(d)(2)(G)). The Court concluded that *"not* appealable" simply meant that the time for taking an appeal from the court judgment had expired. (*Id.* at 2162). Thus, there is no conflict between the traditional definition and the definition found in § 2412. Furthermore, "[s]ection 2412(d)(1)(B) ... speaks of a 'final judgment *in the action.*'" (*Id.*) (emphasis in original). "[T]he plain language [of the statute] makes clear that a 'final judgment' under § 2412 can only be the judgment of a court of law." (*Id.* at 2161) Accordingly, the Court held "that a 'final judgment' for purposes of 28 U.S.C. § 2412(d)(1)(B) ... means a judgment rendered by a court that terminates the civil action for which EAJA fees may be received." (*Id.*) (Citations omitted). Thus, it would not be the decision of the Secretary which triggers the thirty-day EAJA clock, but the action of the district court terminating the civil action.

In *Melkonyan,* although the Court speaks in terms of the "judgment rendered by a court that *terminates the civil action,*" it does not address the situation in which a matter is remanded but not dismissed by the court until after the post-remand proceedings are complete. (*Id.* at 2162) (emphasis added). Instead, the Court refers to either of two situations, depending on the type of remand under § 405(g). Sentence four of § 405(g) states that "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a re-

hearing." (42 U.S.C. § 405(g) (sentence four)). Sentence six involves remands based on new or additional evidence. (42 U.S.C. § 405(g) (sentence six)). (*See also Melkonyan,* — U.S. at ——, 111 S.Ct. at 2162–63; *Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)).

The *Melkonyan* Court stated that "in sentence four cases, the filing period begins after the final judgment ('affirming, modifying or reversing') is entered by the court and the appeal period has run, so that the judgment is no longer appealable." (—— U.S. ——, 111 S.Ct. at 2165). In sentence six cases, "the filing period does not begin until after the postremand proceedings are completed...." (*Id.*) Thus, sentence four remands are "final judgments" for the purposes of EAJA attorney's fee awards despite the fact that plaintiffs are not yet technically "prevailing parties."

This is a significant change from the procedure which existed in the Third Circuit prior to the *Melkonyan* decision. The appropriate time for filing a petition for EAJA fees was after final judgment by the district court, following positive resolution on the merits, including the post-remand administrative proceedings. (*Miller v. Sullivan,* No. 90–2408, 1991 WL 165067 at 1, 1991 U.S. Dist. Lexis 11919 at 4 (E.D. Pa. August 23, 1991) (citing *Taylor v. United States,* 749 F.2d 171, 174 (3d Cir.1984); *Brown v. Secretary of Health and Human Services,* 747 F.2d 878, 883, 883 n. 8 (3d Cir.1984)). In *Brown,* an applicant for attorney's fees whose case was remanded by the court was specifically found not to be a "prevailing party" for the purposes of an EAJA fee award. (747 F.2d at 885). Thus, prior to *Melkonyan,* the time limit in the present matter would have been triggered by this Court's dismissal order dated October 8, 1991. Only then would there have been both a "prevailing party" as well as a determination by a court of law.

■ In the present matter, the defendant contends, and the plaintiff does not refute, that this Court's remand falls under the fourth sentence of § 405(g). This

Court made a substantive ruling in the consent order specifically requiring the Secretary to issue a decision finding plaintiff disabled for a portion of the period for which she sought benefits. (Consent Order to Remand dated June 10, 1991). As there are only two possible types of remands, and there is no new evidence involved in this case, the remand order does indeed fall under the fourth sentence. (*See Melkonyan,* —— U.S. ——, 111 S.Ct. at 2163–65). Thus, as in the *Miller* case, Mrs. Bacon's application period under *Melkonyan* has expired, although under prior law her application would have been timely.

There are alternative approaches to the *Melkonyan* decision as it applies to the present case. The first is to determine whether the thirty-day limit set out in the statute is a jurisdictional bar affecting this Court's ability to hear the issue, or whether the period is merely a statute of limitations that is subject to tolling or similar doctrines. The second is to determine whether the principles of retroactivity apply.

The defendant contends that the time period is a jurisdictional bar. He supports his position with *Dunn v. United States,* 775 F.2d 99 (3d Cir.1985), which also involved an application for attorney's fees pursuant to the EAJA. The court held that a consent decree shall be deemed final as of the date of its entry. (*Id.* at 105). "Final judgment" means a judgment that is final and not appealable, and includes an order of settlement. (EAJA, 28 U.S.C. § 2412(d)(2)(G)). Based upon these rules, the defendant herein argues that since the consent order is not appealable, the plaintiff must have filed within thirty days of its entry, or by July 10, 1991. Defendants thus assert that "if a prevailing party fails to timely file an application, the court is without subject-matter jurisdiction to award fees." (Defendant's Br. at 3). Contrary to this position, however, the *Dunn* court specifically stated that it did not think that terms such as "jurisdictional" were helpful (although the court did not address the issue of whether the time limit was merely a statute of limitations subject to tolling). *Dunn,* 775 F.2d at 103–104.

In a recent case, the Supreme Court addressed the issue of equitable tolling principles and found that they generally applied to congressional acts such as the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c). (*Irwin v. Veterans Admin.,* —— U.S. ——, 111 S.Ct. 453, 456–58, 112 L.Ed.2d 435 (1990)). The Court rejected the idea that the thirty-day limit is jurisdictional, stating that when Congress has manifested its intent to waive sovereign immunity, the Court must be careful not to construe the waiver "unduly restrictively." (*Id.* 111 S.Ct. at 457) (citation omitted in original). As a result, the Court held "that the same equitable tolling applicable to suits against private defendants should also apply to suits against the United States." (*Id.*) Accordingly, this Court finds that it is not faced with a challenge to its subject matter jurisdiction.

In this Court's view, however, it is unnecessary to discuss whether the statute of limitations should be tolled in the present matter because its application to this action is inappropriate under the principles of retroactivity. The test for nonretroactive application of judicial decisions was set out by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971). Three separate factors must be considered.

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants have relied ..., or by deciding an issue of first impression whose resolution was not clearly foreshadowed....

(*Id.* at 106, 92 S.Ct. at 355) (citations omitted). Second, the court

must weigh the merits ... and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further retard its operation.

(*Id.* at 106–107, 92 S.Ct. at 355) (citations omitted). Finally, the court must weigh the inequity imposed by retroactive application, for

[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice of hardship" by a holding of nonretroactivity.

(*Id.* at 107, 92 S.Ct. at 355) (citations omitted).

The *Melkonyan* decision meets the requirements of the first part of the *Chevron* test. *Melkonyan* establishes a new principle of law that clearly overrules the procedure that existed in the Third Circuit prior to the decision.

The second part of the *Chevron* test involves a determination of whether retroactive application of *Melkonyan* would further retard the operation of the EAJA. The purpose of the EAJA was to

remove the financial barrier faced by individuals litigating valid claims against the government. The award of attorney's fees to prevailing parties was intended to overcome the harsh reality that in many cases it was "more practical to endure an injustice than to contest it."

*Brown*, 747 F.2d at 880 (citing H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9, *reprinted in* 1980 U.S.Code Cong. & Ad.News, 4953, 4984, 4988). The EAJA was also intended to foster equitable treatment of citizens by government agencies. (*Id.*) "To cut off plaintiff's opportunity to obtain counsel fees is to pierce the heart of the intent of EAJA which was to provide plaintiffs who seek the recovery of small amounts of money the opportunity to recover counsel fees." *Miller*, No. 90–2408, 1991 WL 165067 at 3, 1991 U.S. Dist. Lexis 11919 at 5.

Applying these principles to the present matter, it is clear that barring Mrs. Bacon's fee application by retroactively applying *Melkonyan* would undoubtedly retard the operation of the EAJA's underlying principles.

Lastly, the third part of the *Chevron* test involves balancing the inequities imposed by retroactive application. It would be substantially inequitable to bar Mrs. Bacon's fee application because she complied with the law that existed previously in this Circuit. The *Melkonyan* decision was issued the same day that Mrs. Bacon's case was remanded. Although it is conceivable that a diligent attorney could have learned of the new case law before an application for fees was challenged, it is not unreasonable for Mrs. Bacon's attorney to have failed to do so. Fee applications are routine matters and under prior law there would have been no reason for plaintiff's counsel to begin thinking about the filing process until the matter had reached ultimate administrative resolution. Mrs. Bacon's attorney filed for fees promptly after the order of dismissal was signed by this Court. As the *Miller* court points out, the EAJA established a deadline after which an EAJA petition may not be filed. (1991 WL 165067 at 2 n. 4, 1991 U.S. Dist. Lexis 11919 at 6–7 n. 4). The plaintiff should not be prejudiced for complying with the precedent procedure that had been established in the Third Circuit. (*Id.*)

In a recent case in this Court, the magistrate determined that it was not unreasonable for the plaintiff to rely on clear Third Circuit precedent when the *Melkonyan* decision came down eleven months after the district court's remand pursuant to the fourth sentence of § 405(g). (*Sansano v. Sullivan*, No. 89–4805, slip op. at 2 (D.N.J. November 1, 1991)).

Other courts faced with the retroactive application of *Melkonyan* have similarly determined that the rule should be applied prospectively only. In *Miller v. Sullivan*, a recent case involving attorney fee applications under the EAJA, the Eastern District of Pennsylvania affirmed the position that fourth-sentence remands are "final judgments" that trigger the thirty-day time limit. (No. 90–2408, 1991 WL 165067 at 2, 1991 U.S. Dist. Lexis 11919 at 4). Thus, although the plaintiff would not have been time-barred under prior law, the period for application under *Melkonyan* had expired. (*Id.*) However, the plaintiff successfully argued that *Melkonyan* should not be applied retroactively because it would unfairly bar her recovery of attorney's fees. (*Id.*) The court stated that "plaintiff's failure to file an application earlier was not

based on any lack of diligence on her part; rather, she did not file an application for fees because the law did not require her to do so." (1991 WL 165067 at 3, *Id.* at 5). In *Miller*, the district court remanded the case on December 13, 1990, five months before *Melkonyan* was decided. The plaintiff then applied for fees sometime around the beginning of August 1991, just over a month after *Melkonyan.*

Another case in accord with *Miller* in the Eastern District of Pennsylvania used a similar *Chevron* analysis to find that the fourth sentence remand rule established in *Melkonyan* should not be applied retroactively. (*Brown v. Sullivan*, No. 89–4138, 1991 WL 225012 (E.D.Pa. Oct. 29, 1991)).

However, the *Chevron* analysis, which had been well-established for twenty years, has been limited by a Supreme Court decision issued on June 10, 1991. In *James B. Beam Distilling Co. v. Georgia,* — U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), the Court was faced with a situation where a Supreme Court decision had significantly changed prior law. The parties before the Court questioned whether *Chevron* could be used to preclude retroactive application of the new law. Justice Souter, who delivered the opinion of the Court, concluded that principles of equality and stare decisis should prevail over a *Chevron* analysis. (*Id.* 111 S.Ct. at 2446). However, he expressly stated that the Court's holding in the case was extremely narrow. (*Id.* at 2448).[3] Retroactive application of a Supreme Court holding, despite any *Chevron* analysis to the contrary, must only take place when: 1) the case changed the law and the issue is one of choice of law; *and* 2) the new law was applied to the litigants in that case. (*Id.*) Justice Souter specifically stated that the holding did not "speculate as to the bounds or propriety" of pure prospective application of new law. (*Id.*)

Despite the explicitly narrow holding of *Beam*, a few district courts appear to have used the case to conclude that *Melkonyan* must be applied retroactively in all situations. (*Hudson v. Sullivan*, 779 F.Supp. 37 (W.D.Pa.1991); *Audette v. Secretary of Health and Human Services*, 776 F.Supp. 84 (D.R.I.1991); *Fergason v. Sullivan*, 771 F.Supp. 1008 (W.D.Mo.1991)). This Court must respectfully disagree with such a conclusion.

First and foremost, the Supreme Court explicitly stated that the *Beam* holding was narrow. This caveat clearly grants to the lower courts the discretion to apply *Chevron* in factual situations that do not meet the narrow requirements of the *Beam* holding. One of those requirements is that the law must have been applied to the litigants before the court in the case that changed the law. (*Beam*, 111 S.Ct. at 2448).

In *Melkonyan*, the Supreme Court remanded the case for further proceedings. (*Melkonyan*, 111 S.Ct. at 2165). The Court noted that the district court's remand to the Secretary was prompted by the discovery of new evidence. (*Id.* at 2163). Although this fact would evidence that the district court remanded to the Secretary pursuant to the sixth sentence of § 405(g), the Court declined to decide the issue because of the possibility that the remand was "a voluntary dismissal under Fed. R.Civ.Proc. 41(a)." (*Id.* at 2165). Moreover, the Court specifically stated that if it was not a sentence six remand but a dismissal order, then "... timeliness of the application [would] not be an issue." (*Id.* at 2166). In such a case, the petitioner would not be entitled to fees because she would not have been a "prevailing party 'in [a] civil action.'" (*Id.* at 2165).

Consequently, if it were ultimately determined in *Melkonyan* that the remand was pursuant to the sixth sentence, new law pertaining to fourth sentence remands would be irrelevant. Similarly, if it were determined that the remand was pursuant to an order for voluntary dismissal, there would be no issue there as to timeliness. Therefore, in any event, the new law regarding fourth-sentence remands will *not*

---

**3.** As indeed it had to be. Justice Souter wrote only for himself and Justice Stevens. Justices White, Blackmun and Scalia filed concurring opinions each with a different slant on prospectivity.

be applied to the litigants in *Melkonyan.* Accordingly, this Court is not bound by the decision in *Beam* and can freely apply a *Chevron* analysis to the *Melkonyan* decision.

Other district courts in the Third Circuit have reached the same conclusion. (*Rollins v. Sullivan,* 784 F.Supp. 253 (E.D.Pa. 1992) (holding that the *Melkonyan* Court did not apply the rule that it announced with respect to sentence four remands, therefore *Beam* does not preclude application of *Chevron* test); *Santiago v. Sullivan,* 783 F.Supp. 223 (E.D.Pa.1992) (holding that fourth sentence remand rule was not applied to the litigants in *Melkonyan,* therefore *Chevron* analysis was proper)).

It should be noted that, in *Hudson,* the Western District of Pennsylvania believed itself precluded from employing a *Chevron* analysis because of the *Beam* decision. *Hudson,* 779 F.Supp. at 40. However, the *Hudson* Court specifically found that the remand in question was pursuant to the sixth sentence of § 405(g) and, therefore, found the EAJA petition timely. (*Id.*). Although *Melkonyan* does verify that there are only two possible types of remands under § 405(g), the holding of the case only changes the law regarding an EAJA application for attorney's fees insofar as it pertains to fourth sentence remands. With respect to sixth sentence remands and the fee application period, the law effectively remains unchanged. As noted above, the law in the Third Circuit prior to *Melkonyan* did not require filing until positive resolution on the merits, including post-remand proceedings. After *Melkonyan,* the filing period for sixth sentence remands still does not begin until after post-remand proceedings are completed *and* the court enters a final judgment. *Melkonyan,* 111 S.Ct. at 2165. Secondly, in stating that *Beam* precludes a *Chevron* analysis, the *Hudson* court did not address the fact that the *Beam* holding was explicitly narrow and that the *Melkonyan* Court did not apply the new rule of law to the litigants before it.[4]

In conclusion, the holding in *Melkonyan* has caused much confusion among the lower courts. As one court in the Western District of Missouri noted, "the decision has given rise to a procedural impossibility." *Fergason,* 771 F.Supp. at 1013. The practical effect of the fourth sentence remand rule established in *Melkonyan* is that EAJA applications for fees will often be time-barred before the applicant attains the status of a "prevailing party." (*Id.*) This is "[c]ontrary to the Supreme Court's view that *Melkonyan* 'harmonizes' the remand provisions of 42 U.S.C. § 405(g) with the requirements of EAJA." (*Id.*) The immediate result of this "procedural impossibility" and the ensuing confusion is that district courts have reached different results with respect to the retroactive application of *Melkonyan.* Of course, this "procedural impossibility" will also burden all EAJA applications in future fourth-sentence remand cases, where retroactivity will not be an issue.

In summary, this Court concludes that the *Melkonyan* decision shall not be retroactively applied to the present action. The application is therefore timely, and this Court will proceed to consider it on the merits.

### B. Award of Attorney's Fees

 As stated above, Title 28 U.S.C. § 2412(d)(1)(A) requires an award of attorney's fees to the prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." It is undisputed that the plaintiff herein is a "prevailing party" as required by the statute. The Secretary's only objection to the award of fees has been to the timeliness of plaintiff's application. He has made no argument justifying his position, except to state that the original decision denying plaintiff benefits was made prior to the Third Circuit's invalidation of the Secretary's disabled widow's claims

---

**4.** Such an analysis was not necessary in *Hudson;* however, it is critical to the case at bar invoking a *fourth*-sentence remand.

evaluation standard. (Defendant's Br. at 1). The government has the burden of proof of substantial justification of its position. *Zimmerman v. Schweiker*, 575 F.Supp. 1436, 1438 (E.D.N.Y.1983) (citing *Ceglia v. Schweiker*, 566 F.Supp. 118, 123 (E.D.N.Y.1983)). Because the government has failed to meet its burden of proof, the only remaining issues are the number of hours for which compensation will be awarded and the hourly fee to be used.

 Under 28 U.S.C. § 2412(d)(2)(A)(ii), the maximum award is $75 per hour, "unless the court determines that an increase in the cost of living … justifies a higher fee." Plaintiff submits that the Consumer Price Index for the New Jersey area, according to the United States Department of Labor, has risen an average of 54.3 per cent since the enactment of EAJA on October 1, 1981. (Plaintiff's Aff. in Support of Motion at 2). Thus, the plaintiff's counsel requests the hourly rate of $115.73 ($75 × .543 = $40.725; $75 + $40.73 = $115.73).

Defendant has not objected to the cost of living increase. The authority in this circuit supports plaintiff's request. In *Allen v. Bowen*, 821 F.2d 963 (3d Cir.1987), the court specifically held that a cost of living increase is available under EAJA for the period from October 1981 until the time of the request for fees. To determine the amount of the increase, "[t]his court has expressly approved the use of the Consumer Price Index in determining cost of living adjustments under the Equal Access to Justice Act." (*Id.* at 976). Therefore, plaintiff's request is granted, and the Court finds that $115.73 is a reasonable hourly compensation to award.

 The hours reasonably expended both in court and in the administrative proceedings on remand are compensable under the EAJA. *See Sullivan v. Hudson*, 490 U.S. 877, 892, 109 S.Ct. 2248, 2258, 104 L.Ed.2d 941 (1989) ("We conclude that … the proceedings on remand are an integral part of the 'civil action' ").

Plaintiff asserts that he spent 59.80 hours on this matter. Defendant has not objected to the reasonableness of this number. Plaintiff's representation began in September 1985. The itemization of hours expended in this case that lasted six years is entirely within reason. Thus, this Court will rely on its experience with matters such as these, as well as its review of the affidavits submitted in the proceedings as a whole. It is noted that the plaintiff's counsel has delineated and described each of the hours for which compensation is requested. Such review supports plaintiff's claims regarding the hours expended in this court on the merits and in the administrative proceedings after remand. Therefore, plaintiff's counsel will be compensated for these hours.

### III. CONCLUSION

Plaintiff's application for fees was not untimely and plaintiff's counsel will be compensated by the Secretary, under the EAJA for 59.8 hours, at the rate of 115.73 per hour, for a total of $6,900.65.