Frederick M. CARROL, Plaintiff,

v.

Louis R. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.

No. CV88–7691–IH(T).

United States District Court, C.D. California.

Sept. 4, 1992.

Donald L. Clark, Inland Counties Legal Services, Victorville, Cal., for plaintiff.

Lourdes G. Baird, U.S. Atty. and James R. Sullivan, Asst. U.S. Atty., Los Angeles, Cal., for defendant.·

## OPINION

IRVING HILL, Senior District Judge.

In this opinion, the Court considers whether it has jurisdiction to entertain and grant a motion to reopen a social security case after an earlier remand to the Secretary. The remand resulted in the plaintiff again being denied benefits. The government opposed the reopening motion claim-

ing that the motion was untimely and, alternatively, that the Court had no further jurisdiction to reopen the prior case. In holding that jurisdiction to reopen exists, the Court finds that the earlier remand order was a "sentence four" remand, a "final judgment", as defined in *Melkonyan v. Sullivan*, —— U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). However, in its consideration of *Melkonyan*, the Court holds that *Melkonyan* does not apply retroactively to the remand order. The Court further holds that, under the facts of this case, plaintiff's motion to reopen was not untimely.

## FACTS

In order to understand the legal problems presented by the instant case, it is necessary to begin with a detailed chronology of facts accompanied by a citation to relevant statutes and regulations of the Secretary of Health and Human Services governing social security disability claims.

On December 24, 1986, Plaintiff applied for social security disability benefits claiming he was unable to work because of multiple injuries from three motorcycle accidents. After a hearing, his claim was denied by an Administrative Law Judge ("ALJ") on February 24, 1988. The denial was affirmed by the Appeals Council of the Department on October 14, 1988. An action was filed in this Court on December 21, 1988 seeking judicial review of the Secretary's decision. The district court action was given the number CV88–7691–IH(T) and was assigned to the undersigned district judge and Magistrate Judge Tassopulos. In granting plaintiff's motion for remand, Magistrate Judge Tassopulos signed an order [1] remanding the case.

---

1. No "judgment" was ever signed by either the magistrate or the district judge. It is worthwhile to explain why. Prior to July 15, 1988 the practice in this district was for all social security remands to be in the form of a "judgment" signed by the district judge to whom the case was assigned. On July 15, 1988, a directive was issued by the Presiding Magistrate of this district on the direction of the Chief District Judge. It ordered that henceforth all social security remands would be in the form of an "order" signed by the magistrate alone. The relevant

language of the directive of July 15, 1988 is as follows: "Following the direction given by Chief Judge Real at the Newport Beach Conference, all Full-time Magistrates will issue orders of remand of Social Security cases to the agency whenever, in their judgment, a remand is appropriate, instead of recommending remand to the District Judge to whom the case was assigned. A copy of the order of remand should be sent to the District Judge for information purposes." A search of this Court's records fails to find any

This Court's order was filed September 29, 1989. The order described errors in the Secretary's proceedings and remanded the case to the Secretary for "further proceedings consistent with the reasons and conclusions set forth in the Order of Remand." It specifically ordered additional administrative proceedings to be conducted in the department and ordered the Secretary to comply with the provisions of 42 U.S.C. Sec. 405(g) in connection with those further proceedings. The order contained no express language as to further or future jurisdiction or as to a later reopening of the case. (This Court then closed the Court's case in the way prescribed by the Administrative Office of the U.S. Courts, i.e., by filing a closing form called "JS–6".)

After the order, the Secretary conducted the proceedings as ordered. An ALJ held further hearings and, thereafter, on September 14, 1990, filed a new decision which was again adverse to the plaintiff and which again denied benefits. That decision was apparently transmitted to plaintiff's attorney at his old office address on the date it was rendered, September 14, 1990. Plaintiff's attorney had moved his office to a new location some time prior to that transmittal. However, plaintiff's attorney states that the decision was received at his new address on September 20, 1990. (Administrative Record, p. 209.)

Under the statutes and regulations governing social security benefits, a claimant adversely affected by a decision of an ALJ may seek review of that decision by the Appeals Council of the Social Security Administration. The regulations provide that in dealing with a case which was remanded by a court for further hearings in the department, review by the Appeals Council must be sought by filing written exceptions to the ALJ's decision. Such written exceptions must be filed within *30 days of the date the applicant receives the ALJ's decision,* 20 C.F.R. Secs. 404.984(b)(1) and 416.-1484(b)(1) (1991) (emphasis supplied).

Plaintiff's counsel sought review by the Appeals Council by filing written exceptions to the ALJ's decision. But it is clear that those exceptions were not timely filed. As stated, the attorney received the ALJ's decision at his new office address September 20, 1990. The exceptions were not filed until October 23, 1990. Thus the 30 day requirement was not met. Although plaintiff's counsel claims in his brief that his exceptions were timely filed, the record demonstrates that he is incorrect.

In the instant case the Appeals Council took no action on plaintiff's counsel's request for review until many months after the exceptions were filed. More than nine months later, the Appeals Council acted on the request for review by means of a letter to plaintiff's counsel dated July 25, 1991. The letter acknowledged receipt of the attorney's exceptions and request for review but implied that the exceptions to the ALJ's decision were filed too late. It directed the attorney to "send the proof" that the exceptions were timely filed. Plaintiff's attorney responded in a letter to the Appeals Council of July 31, 1991. In it, plaintiff's attorney does not explicitly claim that the exceptions were timely filed; instead he offers excuses for his untimely filing, i.e., the moving of his office.

On October 9, 1991, almost a year after the lawyer had filed his exceptions and request for review, the Appeals Council rejected the attorney's explanation and excuses and notified the attorney that it was dismissing plaintiff's exceptions as untime-

---

written "direction" of the Chief District Judge which gave rise to the July 15, 1988 directive. The direction from the Chief District Judge may well have been oral.

Magistrate (now Magistrate Judge) Tassopulos is of the view that this directive was issued in the belief that all social security remands emanating from a district court and issued to the Secretary were interlocutory in nature so that a "judgment" was not required.

After the decision of the Supreme Court in *Melkonyan, supra,* the previous practice was again instituted with social security remands being expressed in the form of a "judgment" signed by the district judge upon recommendation of the magistrate judge.

In the view of this Court, the 1989 "order" of the magistrate containing the instant remand is indistinguishable in purpose and effect from a "judgment" of a district court judge ordering a similar remand.

ly. Plaintiff's counsel received that letter on October 12, 1991.

On December 11, 1991, plaintiff's counsel filed the instant proceeding in this Court. There was no complaint filed. Counsel's initial paper was denominated as a "Motion to Reopen the Case", case CV88–7691–IH, in which, as stated, an order of remand had been filed on September 29, 1989. The undersigned and Magistrate Judge Tassopulos were again assigned to the case.

The government filed opposition to the motion to reopen contending that plaintiff's district court filing of December 11, 1991 was not timely under 42 U.S.C. Sec. 405(g) and that the district court lacked jurisdiction to entertain plaintiff's motion.

The magistrate judge is of the view that jurisdiction does exist and the motion to reopen should be granted. Because of the complexity of the problem and because the question presented appears to be important, the magistrate judge seeks an order of this court confirming that jurisdiction exists before proceeding to hear the case on the merits.

## DISCUSSION OF THE LAW

In approaching this Court for relief a second time, plaintiff has a choice of two alternative and independent procedural methods. Plaintiff could file a new action in this Court or he could move to reopen the earlier proceeding, case number CV88–7691–IH(T), as he has explicitly done. Although plaintiff has captioned his pleading as a "Motion to Reopen", if it is procedurally incorrect or ineffective as such, the Court could treat the motion as a new action.

The government contends that neither procedure is available to plaintiff. The government argues that a new action would be time-barred under the applicable statutes and regulations, and that a motion to reopen could not succeed because this Court retains no jurisdiction from the earlier proceeding. As will be seen, this Court discusses and rejects each government argument in turn.

The government's claim that plaintiff's motion to reopen is untimely is based on 42 U.S.C. Sec. 405(g) and departmental regulations found at 20 C.F.R. Secs. 404.984 and 416.1484. Section 405(g) provides in relevant part:

"Any individual, *after any final decision* of the Secretary made after a hearing to which he was a party, ... may obtain a review of such decision by a civil action commenced within *sixty days after the mailing to him of notice of such decision* or within such further time as the Secretary may allow." (emphasis added)

The statute thus limits, time-wise, the right to seek district court review of an adverse decision by requiring that the "civil action" in the district court be "commenced" within 60 days after the "mailing" to the aggrieved individual of notice of a "final decision of the Secretary". The inquiry is thus focused on what constitutes the Secretary's "final decision". The departmental regulations cited above flesh out the meaning of "final decision". They also attempt to integrate the 60–day limitation of the statute with the functions and actions of the Appeals Council. For example, various of the regulations specify that the Appeals Council has a wide range of discretionary options open to it when an aggrieved person seeks to appeal the ALJ's decision to it. The Council may decide not to look into the matter on the merits at all, not to review it in any fashion. Or the Council may decide to look into the matter on the merits, in which case the Council may thereafter affirm the ALJ's decision, or modify or revise it, or even remand the matter to the ALJ for further proceedings.

Under Sections 404.981 and 416.-1481, an aggrieved party who has sought Appeals Council review has 60 days after he receives notice of the Appeals Council's action to commence his action in the district court. Thus the "final decision" of the Secretary as the term is used in Section 405(g) becomes the notice of Appeals Council action rather than notice of the ALJ's decision. The question then becomes what actions of the Appeals Council fall within the scope of these regulations and thus

constitute the "final decision". · In the instant case, if the Appeals Council's letter of October 9, 1991, dismissing plaintiff's exceptions is deemed to be the "notice of the Appeals Council's action" within Sections 404.981 and 416.1481, plaintiff's counsel received that letter on October 12, 1991, and plaintiff's motion in the district court filed December 11, 1991, would meet the 60–day requirement and would be timely under Section 405(g) of the statute and Sections 404.981 and 416.1481 of the regulations as the institution of a new action.

■ However, the government argues that the Appeals Council's dismissal letter of October 9, 1991, was not the "final decision" of the Secretary under these provisions. The government appears to contend that, under the facts of this case, the "final decision" of the Secretary under Section 405(g) was the decision of the ALJ back in September, 1990.

Authority exists to support the government's position. In *Matlock v. Sullivan,* 908 F.2d 492 (9th Cir.1990), a request for Appeals Council review was not filed until 18 months after the ALJ's decision. The circuit court held that the request for review impliedly included a request that the Appeals Council extend the 60–day time limit of the regulations for seeking Appeals Council review.[2] The Appeals Council had dismissed the claimant's request for review as untimely and the claimant promptly filed a district court case. The claimant argued that since the Appeals Council had necessarily reviewed his request for the Council to extend the 60–day time limit for seeking action by the Council, the Council's dismissal became the "final decision" under Section 405(g). The circuit court did not agree. The circuit opinion points ·out that whereas an Appeals Council denial of review after a *timely* request to it for review is a "final decision" which starts the 60–day time limit under Section 405(g) and Sections 404.981 and 416.1481 of the regulations, a dismissal by the Appeals Council of an *untimely* request for review, or a

refusal by the Council to extend the time for filing exceptions, are discretionary decisions made without a hearing and neither is the "final decision" mentioned in the statute. The circuit court therefore held that the "final decision" under the statute was that of the ALJ.

*Matlock* might appear to dictate that plaintiff's motion to reopen in the instant case should be denied. But some facts in the instant case were not included among the *Matlock* facts, and these facts may well exempt the instant case from the *Matlock* rule. Here, as previously stated, claimant's counsel sought Appeals Council review and filed exceptions that were a few days late, but he acted well before the time for filing a district court action ran out. Counsel heard nothing from the Appeals Council for nine months, then, inexplicably late, the Appeals Council, by letter of July 25, 1991, took note of his exceptions to the ALJ's decision and his effort to obtain Appeals Council review. In its letter the Council gave the lawyer an opportunity to prove that his exceptions were timely filed. That letter would lead a reasonable person to ·believe that the Appeals Council was still considering review of the ALJ's decision and was checking on the timeliness of the lawyer's filing of exceptions. It should be remembered that the Council had the discretion, even if it eventually found the exceptions to be untimely filed, to waive the untimeliness and consider the case on the merits.

Plaintiff's lawyer replied promptly to the Appeals Council letter of July 25, 1991. The Appeals Council, instead of answering promptly and advising the lawyer as to whether it found the exceptions timely filed, or in the alternative, would waive the untimeliness and go on to consider the matter, did not respond for two months. It then informed the lawyer that his exceptions were untimely and that the Council would not review the case.

Under these unique facts, the Court is of the ·view that plaintiff is entitled to the

---

**2.** In *Matlock* there had been no previous remand by a court. So the time limit for seeking Appeals Council review was sixty days. Where

a previous remand had occurred, that period, as pointed out *supra,* is cut to thirty days.

doctrine of equitable tolling which would relieve him of the 60–day limitation for seeking relief in the district court as provided by Section 405(g). The 60–day requirement of that section has been termed a statute of limitations rather than a jurisdictional bar and may be waived by the Secretary. *Aschettino v. Sullivan,* 724 F.Supp. 1116 (W.D.N.Y.1989).

In *Aschettino* the court gave the claimant the benefit of the equitable tolling doctrine in somewhat similar circumstances. In that case the claimant's effort to get the Appeals Council to review the matter failed and the claimant was advised on July 5, 1988 that the Appeals Council would deny review of the case. This advice commenced the 60–day period for seeking district court relief under Section 405(g). Before the 60 days were up, by letter dated July 27, 1988, claimant's counsel asked the Secretary for an extension of the 60–day period. For more than five months the Secretary did not act upon the request for the extension nor did the Secretary even acknowledge it. An acknowledgment finally came, on December 29, 1988, well beyond the 60–day period. Although the opinion does not indicate whether any action accompanied the acknowledgement, one must assume that the requested extension of the 60–day period was denied in the December 29, 1988 acknowledgement. The claimant did not get around to filing his district court action until May 17, 1989, ten months after the July 5, 1988 advice from the Appeals Council that it would not review the case and about six months after the communication from the Secretary acknowledging counsel's request for extension of time under Section 405(g) and apparently denying it.

In rejecting the government's motion to dismiss the action under F.R.Civ.P. 12(b) for failure to commence it within the 60–day time limit of Section 405(g), the district court quoted from an 8th Circuit opinion, *Turner v. Bowen,* 862 F.2d 708 (8th Cir. 1988), which stated generally that government conduct that is misleading may toll a limitation period. The Court in *Aschettino* went on to hold that the government's conduct in that case was misleading, and

should result in the claimant having the benefit of equitable tolling.

In this Court's view, the conduct of the Appeals Council here is similarly misleading and should equally be the basis for granting this plaintiff the benefit of equitable tolling. Plaintiff's motion to reopen in the instant case would thus be timely.

### ALTERNATIVE GROUND

■ If for any reason equitable tolling is held to be unavailable to the plaintiff here, the magistrate judge recommends, and this Court holds, that plaintiff's motion to reopen should be granted on a totally separate ground.

Plaintiff seems to argue that the time limits of Section 405(g), the regulations and the case law involving an *initial effort* to secure district court review, are inapplicable to this case because it involves a *reopening* of a preexisting district court case. Plaintiff seems to contend that this court in its 1989 remand order must be deemed to have reserved jurisdiction to reopen the preexisting case if plaintiff was again aggrieved by the Secretary's new administrative decision. Plaintiff seems to argue that remand orders are always interlocutory and jurisdiction always exists to reopen them when the matter comes back to the court after action of the Secretary on a remand.

There is authority to support plaintiff's view. In *Robertson v. Sullivan,* 925 F.2d 1124 (8th Cir.1991) the Eighth Circuit rejected a district court holding that a claimant's motion to reopen, after an earlier remand and adverse departmental action for the second time, was untimely under Section 405(g). Reopening was permitted even though the motion to reopen was filed *three years* after the last departmental action. There was thus no chance whatever for the motion to reopen to be considered timely under Section 405(g) and the regulations. The *Robertson* opinion states:

"We view it as well settled that a remand order is interlocutory and does not divest the district court of jurisdiction over the case. Jurisdiction is thus retained after

a remand and is not terminated until the district court enters a final judgment." 925 F.2d at 1125–26 (citations omitted).

The government says that if *Robertson* was meant to apply to all social security remands, it has been *pro tanto* overruled by the Supreme Court in *Melkonyan, supra,* an opinion which was filed four months after that in *Robertson.*

*Melkonyan* concerned an application for attorneys fees by counsel for a successful social security claimant under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. Sec. 2412. That statute requires an application for attorneys fees to be filed within 30 days of "final judgment in the action". It became necessary for the Supreme Court to consider whether a district court remand was or was not a "final judgment in the action". The opinion in *Melkonyan* announced a rule of law on this subject as follows: In the statutory scheme involving social security benefits and recourse to the district court after departmental decisions, there are two and only two kinds of remand which a district court may employ and the two kinds have totally different consequences. The two kinds are, as the Court describes them, a "sentence four" and a "sentence six" remand. These refer to the sequence of sentences within Section 405(g). A sentence four remand, the Court pointed out, was one based on legal errors in the department's handling of the claim. And a sentence six remand was one based on the emergence of new evidence that was not available to the claimant at the time of the administrative hearing. A sentence four remand, the Court states, is a final judgment and it is clear from the Court's opinion and reasoning that no effort to exercise further jurisdiction can succeed after such a remand.[3]

The Court went on to state that a sentence six remand, because of clear language in the social security statute, implies and necessarily involves a reservation of jurisdiction for the future and contemplates further proceedings in the district court and a final judgment at the conclusion thereof. A sentence six remand judgment, the Court said, is therefore always interlocutory and never a "final" judgment.

It is clear that this Court's 1989 remand was a sentence four remand because it was based only on legal errors in the department's proceedings.[4]

Thus, if the *Melkonyan* rule regarding sentence four remands applies to the instant case, plaintiff's resort to a motion to reopen would avail him nothing. After a sentence four remand no jurisdiction derived from the old case remains.

Some circuits read the *Melkonyan* opinion as involving no blanket and total finality for each and every sentence four remand. They have held that some sentence four remands are absolutely final under *Melkonyan,* but others are not. Two circuits have held that only sentence four remands that are *intended* to be final judgments are truly final. *Gutierrez v. Sullivan,* 953 F.2d 579 (10th Cir.1992); *Welter v. Sullivan,* 941 F.2d 674 (8th Cir.1991). Another circuit has held that only sentence four remands that "affirm, modify or reverse" a decision of the Secretary on the merits are final. *Damato v. Sullivan,* 945 F.2d 982 (7th Cir.1991). *Chung v. Sullivan,* 1992 WL 162837, 1992 U.S. Dist. LEXIS 9297 (C.D.Cal.1992) (Rose, Mag.J.) adopts both rationales.

Under the view of *Melkonyan* enunciated by the decisions cited above, this Court would have jurisdiction to grant this plaintiff's motion to reopen. Under the rationale of *Gutierrez* and *Welter,* it would appear that this Court's 1989 remand signed by the magistrate, was not *intended* to be final. In fact, it appears that, at that time, this Court believed that all re-

---

**3.** Although, unlike this case, *Melkonyan* is an EAJA case, this Court believes that the discussion of the finality of sentence four remand orders in *Melkonyan* is equally applicable to district court proceedings such as the instant case which do not involve attorneys fees and seek only review of the Secretary's decision.

**4.** When the matter was reopened by the Secretary, some new evidence was received. But this Court did not order any new evidence to be received and the fact that some was received does not change the nature of the remand from sentence four to sentence six.

mands were interlocutory. Under the rationale of *Damato* this Court's 1989 remand did not "affirm" the Secretary's decision, it did not "modify" the Secretary's decision, and it did not "reverse" the Secretary's decision in the sense of ordering the Secretary to award benefits while empowering the Secretary only to compute their amount. This Court did not decide the merits of the case; it remanded the case so that the Secretary could again decide it on the merits.

None of the above-cited Court of Appeals decisions so limiting the *Melkonyan* opinion come from our circuit, the Ninth. This Court believes that those opinions unjustifiably limit the *Melkonyan* holding. This Court is of the contrary view, i.e., that *all* sentence four remands are final, a view enunciated by the Fifth Circuit. *Luna v. U.S. Dept. of Health and Human Services*, 948 F.2d 169 (5th Cir.1991); *accord, Misciagna v. Secretary of DHHS*, 786 F.Supp. 1120 (E.D.N.Y.1992).

Under this Court's view of *Melkonyan*, plaintiff's motion would necessarily have to be regarded as the institution of a new case and that new case, being untimely filed, would have to be dismissed. The motion to reopen would necessarily have to be denied. But plaintiff makes one last argument to avoid that result.

Plaintiff argues that even though the remand in the instant case was a sentence four remand, and even if the *Melkonyan* finality rule is applicable to all sentence four remands, it should not be applied to this case. Plaintiff appears to argue that *Melkonyan*, with respect to sentence four remands, announces a new rule of law. On that basis, plaintiff says that this Court must determine whether the new rule should or should not be retroactively applied to this Court's remand order. Plaintiff contends that it should not. In this respect the Court agrees with plaintiff.

*Melkonyan* does enunciate a new rule of law.[5] Its application to the instant case would be a retroactive application and the Court must determine whether the *Melkonyan* rule should be retroactively ap-

**5.** Although the parties focus largely on whether *Melkonyan* should be applied retroactively as the governing decision, the government in its last paper (filed after the magistrate judge had formulated her report and recommendations) makes an alternative argument that would avoid the *Melkonyan* retroactivity problem. The government says that an earlier Supreme Court decision, *Finkelstein v. Sullivan*, 496 U.S. 617, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990), should be the governing decision because it should be read as holding that sentence four remands are final decisions. The government goes on to argue that if *Finkelstein* is so read, there is no retroactivity problem in the instant case because *Melkonyan* did not announce a new rule. The rule had already been announced in *Finkelstein*. This argument fails because the *Finkelstein* opinion did not clearly indicate that remands like that ordered in the instant case must be considered a final decision. *Finkelstein* held that sentence four remands were final and sentence six remands were interlocutory, but it did not hold that those were the only possible types of remand. The language of the *Finkelstein* opinion left open the possibility that there might be still other types and said nothing about the finality of such other types if they existed. The government, in arguing the *Melkonyan* case before the Supreme Court, asserted that even after *Finkelstein* there were other types. *Melkonyan,* —— U.S. at ——, 111 S.Ct. at 2164. The Court in the *Melkonyan* opin-

ion admits the uncertainty. *Id.* Not until that opinion came down was it clearly decided that there could be only two possible types of remand. Thus, not until then could this Court know that it was required to consider its 1989 remand as a sentence four remand. In *Robertson, supra,* which was post-*Finkelstein* and pre-*Melkonyan,* the Eighth Circuit indicated that this Court's 1989 remand should be considered interlocutory. Thus *Melkonyan* and not *Finkelstein* should be viewed as the case announcing the new rule.

A case seemingly favorable to the government, although not cited by it, is distinguishable. *Frizzell v. Sullivan,* 937 F.2d 254 (5th Cir.1991). *Frizzell* affirmed a district court's denial of a claimant's "motion to reinstate" her case, reasoning under *Finkelstein* that the district court's earlier sentence four remand has "divested" it of jurisdiction to proceed further. However, the claimant in *Frizzell conceded* that the earlier remand was a sentence four remand, making directly applicable the *Finkelstein* rule that sentence four remands are final. As noted above, in the instant case this Court's remand order was not necessarily a sentence four remand under *Finkelstein,* and thus it could not have been considered final until *Melkonyan* was decided. The proper inquiry here is whether *Melkonyan* applies retroactively to this case. Curiously, the *Frizzell* court took no note of *Melkonyan,* which had been decided two months earlier.

plied. The retroactivity question is critical. Under the old rule as set forth in *Robertson, supra,* the instant motion to reopen would have to be granted and the Court would have jurisdiction to grant it. Under the new *Melkonyan* rule, if *Melkonyan* is retroactive, the Court would have no jurisdiction to reopen the prior case.

At the threshold of any retroactivity inquiry, a court must determine whether the decision in question falls within the rule announced by the Supreme Court in *James B. Beam Distillery v. Georgia,* — U.S. —, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). *Beam* holds that a new rule of law must be given retroactive application if the Court in the case announcing the new rule, applied it to the parties before it in that case. If the answer is in the affirmative, other retroactivity inquiries and factors are foreclosed and the new rule must be applied retroactively in all cases.

This Court has carefully analyzed *Melkonyan* to determine whether the new rule enunciated in *Melkonyan* was applied to the parties before it in that action. This Court concludes that the Supreme Court did not apply the new rule, with respect to sentence four remands and their finality, to the parties before it. The Supreme Court clearly holds, as the parties in *Melkonyan* themselves agreed, that the facts of *Melkonyan* did not involve a sentence four remand. The Court indicates that the district court disposition in *Melkonyan* was either a sentence six remand or a dismissal. The Supreme Court sent the case back to the trial court for determination of which of those it was. Clearly, the Court did not apply its new rule regarding sentence four

remands to the parties before it, because the case did not involve a sentence four remand. Thus it seems quite clear that *Melkonyan* is not a case in which, under *Beam,* the new rule must be retroactively applied.[6]

The conclusion that *Beam* does not govern, however, does not end the inquiry. Other pre-*Beam* opinions of the Supreme Court indicate the possibility that a decision like *Melkonyan* may still be applied retroactively even if it does not meet the *Beam* test.

The leading case is *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The opinion in *Chevron* requires that consideration be given to three separate factors. They are: (1) whether the decision establishes a new principle of law; (2) whether retroactive application will further or retard the purposes of the rule in question; and (3) whether applying the new decision will produce substantial inequitable results. *Chevron,* 404 U.S. at 106–07, 92 S.Ct. at 355–56.

With respect to the first factor, whether the decision established a new principle of law, this Court has already found that it does. Regarding the second factor, whether retroactive application furthers or retards the purposes of the rule in question, it is very difficult to make a finding on this factor because it is difficult to enunciate the "purposes" of the new rule. If a purpose of the new rule is to advance the finality of adjudication by spelling out that certain remands are final judgments and there can be no reopening of such cases,

6. Thus far only district courts have considered whether the *Melkonyan* rule on sentence four remands is to be retroactively applied under the *Beam* rule. There is a split of authority. Published opinions agreeing that *Beam* does not require the retroactive application of *Melkonyan* are *Boronat v. Sullivan,* 788 F.Supp. 557 (S.D.Fla.1992); *Sansano v. Sullivan,* 788 F.Supp. 218 (D.N.J.1992); *Bacon v. Secretary of Health and Human Services,* 786 F.Supp. 434 (D.N.J. 1992); *Rollins v. Sullivan,* 784 F.Supp. 253 (E.D.Pa.1992); *Santiago v. Sullivan,* 783 F.Supp. 223 (E.D.Pa.1992); *Lopez v. Sullivan,* 780 F.Supp. 496 (N.D.Ill.1991); *Butts v. Bowen,* 775 F.Supp. 1167 (N.D.Ill.1991). Opinions holding

to the contrary are *Winn v. Sullivan,* 787 F.Supp. 172 (E.D.Mo.1992) (retroactive application assumed); *Misciagno v. Secretary of DHHS,* 786 F.Supp. 1120 (E.D.N.Y.1992); *Salvador v. Sullivan,* 786 F.Supp. 830 (N.D.Cal.1992); *Audette v. Secretary of Health and Human Services,* 776 F.Supp. 84 (D.R.I.1991); and *Fergason v. Sullivan,* 771 F.Supp. 1008 (W.D.Mo.1991).

In a recent opinion available on WESTLAW and LEXIS, a district court stated that a "clear majority of courts have determined that *Melkonyan* should not be applied retroactively." *Pizzo v. Sullivan,* 1992 WL 69991, 1992 U.S. Dist. LEXIS 5206 (N.D.Ill.1992).

that purpose is, in this Court's view, aided by retroactive application.

However, it could be said that the new rule has another, more important purpose, i.e., to clarify the procedures for handling social security claims and to increase their efficiency. That purpose, in the Court's view, would not be served by retroactive application because retroactive application would upset previously held expectations concerning recourse to the courts and would result in withdrawing in pre-*Melkonyan* remand cases, the right to judicial review afforded claimants under prior court decisions. Confusion and proliferation of litigation would necessarily follow, greatly burdening the social security system. Any benefit from clarifying social security procedures and handling claims more efficiently would be adequately realized by prospective application alone of the new rule. Retroactive application would retard the said purpose. On balance, the second factor does not support retroactive application.

With respect to the third factor, the most important one, in this Court's view retroactive application would produce "substantial inequitable results" because, as above mentioned, it would upset the reasonable expectation of many claimants who obtained earlier sentence four remands. Claimants would reasonably expect, under the earlier rule, that if the department again decided to deny benefits, they could have access to the courts by means of a motion to reopen without respect to the time limitations governing new actions. The present plaintiff, Mr. Carrol, might well be typical of that group. Retroactive application of the *Melkonyan* rule would bar him from recourse to the court. He would find himself in a "Catch 22" situation. Retroactive application would mean that he could not come to court now because he should have sought recourse to the court five months before *Melkonyan* was even filed. No claimant and no practitioner of law could, in this

Court's view, be reasonably expected to have anticipated the *Melkonyan* decision months before its publication.

Weighing all the factors of *Chevron*, this court holds that *Melkonyan* should not be retroactively applied. It is worth noting that virtually all published opinions which have thus far considered the same question, albeit in the EAJA context, have reached the same conclusion, i.e., that *Melkonyan* is not retroactive under the *Chevron* factors.[7]

## CONCLUSION

For the reasons above stated, the court grants plaintiff's motion to reopen in the instant case. The matter is again referred to Magistrate Judge Tassopulos to conduct the necessary hearings and to make appropriate recommendations to this Court concerning judgment on the merits.

---

7. *Bacon v. Secretary of Health and Human Services,* 786 F.Supp. 434 (D.N.J.1992); *Rollins v. Sullivan,* 784 F.Supp. 253 (E.D.Pa.1992); *Thomas for Brown v. Sullivan,* 785 F.Supp. 788 (C.D.Ill.1992); *Santiago v. Sullivan,* 783 F.Supp. 223 (E.D.Pa.1992); *Lopez v. Sullivan,* 780 F.Supp. 496 (N.D.Ill.1991); *Butts v. Bowen,* 775 F.Supp. 1167 (N.D.Ill.1991); *but see Woods v. Department of Health and Human Services,* 778 F.Supp. 976 (N.D.Ill.1991).