

# Missouri Court of Appeals
## Southern District
### Division Two

ELEAZAR GONZALES, )
         )
    Claimant-Respondent, )
         )
vs. ) No. SD33268
         )
BUTTERBALL, L.L.C., ) Filed March 13, 2015
         )
    Employer-Appellant, )
         )
ACE AMERICAN INSURANCE COMPANY, )
         )
    Insurer-Appellant, )
         )
and )
         )
TREASURER OF THE STATE OF MISSOURI, )
AS CUSTODIAN OF THE SECOND INJURY )
FUND, )
         )
    Additional Party-Respondent. )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

AFFIRMED

Butterball, L.L.C., and its insurer, Ace American Insurance Company (collectively "Employer"), appeal the award of permanent total disability benefits to Eleazar Gonzales for an injury to his right hand on August 7, 2009. In a single point relied on, Employer claims the Labor and Industrial Relations Commission's ("the Commission") award is erroneous because it is not supported by sufficient and competent evidence in the record; Employer contends that the

1

record established that Gonzales was only permanently partially disabled or, in the alternative, that Gonzales was permanently totally disabled but such permanent total disability was not the result of the August 7, 2009 injury. We disagree, and affirm the Commission's award.

**Factual and Procedural Background**

Gonzales was born during May 1947 in Guatemala and currently resides in Joplin, Missouri. He reached the third grade in Guatemala and did not obtain a GED. Although Gonzales has lived in the United States for approximately twenty years and is a United States citizen, his native language is Spanish; he does not read or write English. Although he attempted to learn English in 2000, Gonzales was also working at the time and was too tired to complete the program.

Before his employment with Butterball, which began in January 2001, Gonzalez held several jobs in Guatemala, including as a shoe manufacturer and with a textile company, both of which were hand-intensive jobs. Gonzales also worked for the Guatemalan government police department, which was a physical job.

Gonzales also held numerous jobs in the United States before working for Butterball, including as a cement mixer for a construction company and as a manual laborer for plastic and metal companies. He also completed some training pertaining to soldering pieces used in electronics and worked as a laborer in soldering electric parts. All of Gonzales's positions while in the United States have been hand intensive.

On August 7, 2009, Gonzales was working in Butterball's evisceration department, controlling the only machine used in that department. The machine was used to sort and clean turkey gizzards. Gonzales's responsibilities included cleaning and separating the gizzards, both cut and uncut; hanging up the gizzards; and pushing the gizzards into the machine with his right hand.

2

At the time of his injury, Gonzales, who is right-hand dominant, was wearing four gloves while working the machine, pursuant to Butterball's rules and safety protocols. These gloves were made of steel mesh, plastic, and fabric. He was also wearing a security glove. While pushing the gizzards into the machine with his right hand, the machine's roller grabbed the tip of Gonzales's glove, and all four of Gonzales's fingers on his right hand became stuck in the machine. Gonzales tried to remove his right hand from the machine but was unsuccessful. Another employee shut down the machine, but Gonzales still could not remove his hand. Even after Butterball mechanics turned off and disassembled the machine, a process which took some time, Gonzales was unable to remove his right hand.

Following the unsuccessful attempts to free Gonzales's hand, a Butterball employee called paramedics. Upon the arrival of the paramedics, it took an additional 37 minutes before Gonzales's hand was able to be removed from the machine. Gonzales was then taken by ambulance to McCune Brooks Hospital in Carthage, Missouri. The ambulance report showed that Gonzales's fingers on his right hand were crushed and blue with little sensation and delayed capillary refill. Records from McCune Brooks indicate that Gonzales was diagnosed with a traumatic crush injury to his right hand, consisting of an avulsion injury with controlled bleeding and crepitus, crushed deformity dislocation, ecchymosis, and soft tissue swelling of his hand. Following his initial treatment, Gonzales was flown by helicopter to Freeman Hospital in Joplin. Records from Freeman Hospital indicate an obvious deformity of Gonzales's right hand and partial amputation of the fifth digit, as well as lacerations on his right index, ring, and small fingers requiring sutures; the records also indicate Gonzales suffered tenderness with a limited range of motion and functional deficit. X-rays revealed Gonzales's right fifth finger to be

3

dislocated. A subsequent x-ray following treatment showed a reduction of the dislocation along with a small avulsion fracture at the base of the distal phalanx.

Gonzales underwent evaluation by Dr. Dennis Estep on August 10, 2009. Gonzales was unable to hold any tools in his right hand and complained of pain. Gonzales had significant discomfort when changing the dressings on his wounds, and Dr. Estep administered a regional block both median and ulnar at the right wrist. At that time, Dr. Estep diagnosed Gonzales with a crush injury of the right hand with a moderate amount of edema; a fifth-digit dislocation; a fifth-digit fracture, distal of the DIP joint; lacerations to the index, ring, and fifth digits; and a degloving injury to the distal aspect of the third, fourth, and fifth digits, with the major damage being to the fourth and fifth digits. X-rays taken later that day found fractures in both the fourth and fifth digits, with a possible fracture of the third digit. Dr. Estep released Gonzales to work but restricted Gonzales such that he not use his right hand, not lift more than ten pounds, and not operate dangerous machinery. Gonzales was also referred to an orthopedic surgeon for evaluation.

The following day, Gonzales was evaluated by Dr. Paul Toma, an orthopedic surgeon. Dr. Toma determined that Gonzales suffered a crush injury to his right hand and a degloving injury of varying thickness to all of the fingers on his right hand. Dr. Toma released Gonzales to work but without the use of his right hand. After a follow-up visit one week later, Dr. Toma referred Gonzales to a hand therapist.

Gonzales attended twenty-three visits with IPT Physical Therapy, from August 20, 2009, through October 12, 2009. Throughout the entire course of therapy, Gonzales suffered from throbbing pain in all of the fingers on his right hand and had difficulty performing physical tasks because of that hand's hypersensitivity.

4

Following Gonzales's completion of physical therapy, he was again evaluated by Dr. Toma, on November 3, 2009. Dr. Toma found an area on Gonzales's right ring finger that had not completely healed, as well as a reduced range of motion at the DIP joint. Dr. Toma found Gonzales not to be a candidate for surgery. Although Gonzales continued to complain of numbness in his right hand, Dr. Toma found Gonzales to be "fairly functional[.]"

Gonzales underwent a final evaluation by Dr. Toma on November 24, 2009. Dr. Toma noted that Gonzales still complained of pain in his right hand and was very sensitive along the finger pads of the middle and ring fingers; he also noted that Gonzales had had a difficult time regaining motion in his right hand and likely had an avulsion of the FDP on his right ring finger. In Dr. Toma's opinion, Gonzales had achieved maximum medical improvement at that time, and he was released back to work full time.

At his final evaluation of Gonzales, Dr. Toma determined that Gonzales had suffered 10 percent impairment for scarring and sensory changes in his right middle finger, as well as 26 percent impairment for the loss of DIP motion. This combined for a 36 percent impairment of the right middle finger, which equates to 7 percent impairment of the right hand or 6 percent impairment of the upper extremity. Dr. Toma further found a 10 percent impairment of the right ring finger due to the scarring and sensory changes, along with 36 percent impairment due to loss of motion at the DIP joint. This combined for 46 percent impairment of the right ring finger, equating to a 4 percent impairment of the right hand or a 4 percent impairment of the upper extremity. These combined for a 10 percent impairment of the upper extremity.

Following his release from medical treatment, Gonzales continued to experience pain in his right hand and fingers. Although Employer did not provide for any further medical

5

treatment, Gonzales sought treatment on his own from Dr. Jeff Wool, who prescribed pain medication.

Upon returning to work full-time at Butterball, Gonzales was assigned to a different area with new job duties. Initially, his new duties consisted of plucking turkeys. He was limited in his ability to use his right hand effectively, however, and was only able to use his left hand to pluck the turkeys. After approximately two weeks, Gonzales was again moved to a new position, this time removing the innards, fries, and eggs from the turkeys. Though this position required the use of both hands, Gonzales was only able to use his left hand as he was still suffering from pain and lack of function in his right hand. Gonzales was repeatedly called into his supervisor's office and told that he must use both hands, and Gonzales was written up on multiple occasions for failing to use both hands. According to Gonzales, he was unable to complete his new duties because of the continuing pain, loss of motion, and sensitivity in his right hand and, although he did all that he could to use his right hand at work and to accomplish his tasks using only his left hand, Gonzales was terminated by Butterball on December 30, 2009, for failing to use both hands as instructed.

Gonzales filed an unemployment claim on January 10, 2010, which Butterball disputed. A hearing was held March 23, 2010, to determine whether Gonzales was entitled to unemployment benefits. Although testimony was presented by Butterball at the hearing stating that its reason for requiring the use of two hands is to protect the employee from injury, Gonzales testified that Butterball was not satisfied with his production levels when he used only one hand. Gonzales was unable to find employment following his termination from Butterball due to the condition of his right hand. Ultimately, Gonzales was found ineligible for unemployment benefits because he failed to follow Butterball's directive to use two hands instead of one, which

6

was determined to constitute misconduct connected with work. Gonzales's appeal of this decision was denied.

Gonzales was evaluated by Dr. Shane Bennoch on June 7, 2010, via a review of Gonzales's medical records and a physical examination. Dr. Bennoch noted that Gonzales's right hand was hypersensitive to pinpricks and pinwheel testing and that Gonzales's right hand was visibly abnormal. He opined that Gonzales likely had muscle atrophy with tapering of the fourth and fifth fingers starting at the PIP joint and extending distally. Dr. Bennoch further noted that Gonzales's fourth and fifth fingers appeared shiny and had very little hair when compared to the rest of the hand. The examination revealed that Gonzales lacked approximately 20 degrees of extension at the DIP joint of his fifth finger and 3 degrees of extension at the PIP joint; likewise, Gonzales lacked approximately 10 degrees of extension at the DIP joint of his fourth finger. Although Gonzales was shown to have a normal range of motion at the right wrist, he was unable to hold against resistance and could not oppose his fifth finger and thumb. In attempting to hold a dynamometer with his right hand, Gonzales used only his index and long finger, leaving his fourth and fifth fingers extended. Dr. Bennoch found that Gonzales likely suffered from complex regional pain syndrome of the right hand and that the injuries to his right hand were likely permanent, with Gonzales having reached maximum medical improvement. Finding that Gonzales's accident on August 7, 2009, was the prevailing cause of the injury to his right hand and the resulting impairment, Dr. Bennoch initially rated Gonzales's disability at 60 percent of the right hand; this rating took into account Gonzales's significantly reduced function of the right hand as well as his hypersensitivity. Dr. Bennoch later changed that rating to 70 percent to reflect that Gonzales was previously right-hand dominant. Dr. Bennoch assigned numerous restrictions to Gonzales, including no lifting or carrying with his right hand; no

pushing or pulling with his right hand; no repetitive work with his right hand; no climbing with his right hand; no balancing with his right hand; no handling, fingering, or feeling with his right hand; and only limited work with vibrations or hazards.

Dr. Bennoch found Gonzales to have been temporarily and totally disabled since the time of the accident, minus the approximately six weeks that Gonzales returned to Butterball before his termination; he found that temporary and total disability to continue to the time of the evaluation. Dr. Bennoch then found Gonzales to be permanently and totally disabled as a result of his poor prognosis.

At the request of Employer, Gonzales was evaluated by Dr. Allen Parmet on April 14, 2011. Dr. Parmet noted Gonzales's shiny skin and scar at the DIP joints of his right hand. He further found Gonzales to have limited motion in his right shoulder and to guard his right hand. Gonzales was unable to fully extend the second, fourth, and fifth fingers of his right hand, and he had diminished grip strength due to pain. Gonzales complained of severe pain in all of the fingers on his right hand when touched. Dr. Parmet agreed with Dr. Toma's rating of 10 percent in the right hand and finding that Gonzales had achieved maximum medical improvement as of November 2009, but determined that any atrophy was due to Gonzales's guarding and lack of use of his right hand. Dr. Parmet found Gonzales to be 25 percent permanently and partially disabled; he opined that Gonzales's right hand was still capable of being a "helper hand" and that even one-armed individuals are capable of regular employment.

Gonzales filed for, and was awarded, Social Security Disability benefits. He has been receiving those benefits since 2011.

On June 1, 2012, Gonzales saw Cory Carr, a licensed physical therapist in Springfield, for a Functional Capacity Evaluation. Gonzales complained of sharp, shooting pains in his right

8

shoulder and hand, with pain in his hand and fingers when lightly touched. He continued to experience hypersensitivity in both his right shoulder and hand. Gonzales had pain in both his right shoulder and hand with every activity, along with limited grip strength in his right hand. He also had decreased flexion, abduction, and extension in the right shoulder, elbow, and fingers. Carr restricted Gonzales to lifting, pressing, carrying, pushing, or pulling no more than ten pounds. Carr found Gonzales unable to grab objects weighing less than ten pounds due to his hypersensitivity and unable to utilize his fine motor skills because of nerve damage to his right hand. Carr, like Dr. Bennoch, placed Gonzales at a less-than-sedentary work level.

Gonzales was examined by Phil Eldred, a vocational rehabilitation expert, on September 28, 2010; Eldred was deposed on June 2, 2011, and, after his deposition, reviewed the files of all doctors and experts who had examined Gonzales. Eldred also took an oral history from Gonzales and conducted vocational testing on Gonzales. He found Gonzales to be restricted from lifting, carrying, climbing, kneeling, reaching, handling, fingering, and feeling with his right hand or arm, as well as restricted from working in proximity to moving mechanical parts, in high exposed places, and with explosives. Gonzales's performance with his right hand on the Purdue Pegboard Test, which measures dexterity, placed him below the first percentile; his performance with his left placed him at the first percentile. Gonzales further scored at the sixth percentile in math computation; he was not tested in reading or spelling because he does not read or write English.

Following Eldred's review of Gonzales's previous examinations and Gonzales's performance on the vocational testing, and considering Gonzales's work history and training, education, intellect, age, transferrable skills, and current abilities, Eldred placed Gonzales at a less-than-sedentary work level as defined by the United States Department of Occupational

Titles, consistent with both Carr and Dr. Bennoch. As there are no such jobs on the open labor market, Eldred found Gonzales to be permanently and totally disabled. Eldred further expressly found Gonzales to be precluded from performing any of his previous jobs as a result of the injury to his right hand and, based upon Gonzales's pain, physical impairments, medical restrictions, use of narcotic pain medication, limited education, limited ability to understand English, advancing age, inability to perform hand-intensive tasks, and history of manual labor, found it unlikely that any employer would consider hiring Gonzales.

Gonzales was examined by Michelle Sprecker, a vocational rehabilitation counselor, at Employer's request on August 16, 2011. Sprecker met with Gonzales and took an oral history, and she reviewed Gonzales's medical records, but she did not perform any vocational testing. Sprecker's report contained an incorrect date of injury and indicated that Gonzales is left-hand dominant, contrary to Gonzales and to all medical records. It was Sprecker's opinion that, assuming no restrictions as assigned by Dr. Toma, Gonzales would be able to return to his pre-injury position at Butterball or be hired as a packer or producer. Sprecker did acknowledge that Gonzales would not be able to perform these duties under the restrictions placed by Drs. Parmet and Bennoch. Sprecker later added an addendum to her initial report in which she identified four additional positions that Gonzales should, in her opinion, be able to perform: laundry worker, light assembler, housekeeper, and dry-clean presser. By Sprecker's own admission, all of these positions generally require the use of both hands. All four of these positions were discussed in detail by Eldred, who directly contradicted Sprecker's finding that Gonzales could perform such positions.

Gonzales continues to experience pain in his right hand and fingers; that pain increases when his fingers are bent. Gonzales is unable to make a fist, grip, or write with his right hand

10

and cannot fully extend his fourth and fifth fingers. His right hand is very sensitive and he is unable to lift anything with, push anything with, or otherwise use his right hand. Gonzales, who was previously right-hand dominant, now writes, drives, shaves, and performs other personal care tasks and domestic chores with his left hand.

Gonzales filed a claim for workers' compensation benefits on August 8, 2009. A hearing was held before an Administrative Law Judge ("ALJ") on April 2, 2013. The ALJ issued her award granting Gonzales workers' compensation benefits on August 16, 2013. In her award, the ALJ found that Gonzales was permanently and totally disabled as a result of the injury to his right hand on August 7, 2009; that the Second Injury Fund had no liability; that Employer was entitled to a credit for the period of time Gonzales returned to work, from November 3, 2009, through December 30, 2009; that Gonzales violated Butterball's safety rules when he sustained his injury and that his disability benefits should be accordingly reduced by 25 percent; and that, as Gonzales was found to be permanently and totally disabled, he is not entitled to further compensation for disfigurement. The ALJ expressly found credible the opinions of Eldred and Dr. Bennoch and found incredible the opinion of Sprecker and Dr. Parmet.

Employer filed for review with the Commission challenging whether Gonzales was permanently and totally disabled. On March 5, 2014, the Commission affirmed the ALJ's award, incorporating it into its award of permanent and total disability benefits to Gonzales. This appeal followed.

**Standard of Review**

Our review on appeal is governed by section 287.495 and *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003), which state that a

> court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

11

That the [C]ommission acted without or in excess of its powers;

That the award was procured by fraud;

That the facts found by the [C]ommission do not support the award;

That there was not sufficient competent evidence in the record to warrant the making of the award.

We review the Commission's findings and award for such error, ***Clayton v. Langco Tool & Plastics, Inc.***, 221 S.W.3d 490, 491 (Mo.App. 2007); however, where, as here, the Commission incorporates the findings and award of the ALJ into its own final award, we consider the ALJ's findings and award as that of the Commission. ***Id.*** Our review is limited by the Missouri constitution, article V, section 18, to a determination of whether the award is "supported by competent and substantial evidence upon the whole record." This "standard is not met if the award is contrary to the overwhelming weight of the evidence." ***Wagner v. Harbert Yeargin Constr. Co.***, 145 S.W.3d 511, 513 (Mo.App. 2004).

We do not re-weigh the evidence presented to the Commission; rather, we defer to the Commission's findings as to the credibility of witnesses and the weight of a witness's testimony. ***Hornbeck v. Spectra Painting, Inc.***, 370 S.W.3d 624, 629 (Mo. banc 2012). This includes the credibility of medical experts and conflicting medical theories. ***Armstrong v. Tetra Pak, Inc.***, 391 S.W.3d 466, 470-71 (Mo.App. 2012). Accordingly, although we review questions of law *de novo*, we will not substitute our own judgment on issues of fact where the Commission has acted within its authority, even if we would have reached a different conclusion. ***Underwood v. High Road Indus., LLC***, 369 S.W.3d 59, 66 (Mo.App. 2012). "Whether a particular employee is permanently and totally disabled is a factual, not a legal, question." ***Molder v. Missouri State Treasurer***, 342 S.W.3d 406, 409 (Mo.App. 2011).

12

**Discussion**

In a single point relied on, Employer contends that the Commission's award was against the overwhelming weight of the evidence "in that the credible and persuasive testimony, medical records, and expert medical and vocational opinions established that" Gonzales was rendered only permanently partially disabled by his August 7, 2009 injury or, in the alternative, that the August 7, 2009 injury was not the primary cause of Gonzales's permanent total disability. We disagree.

A successful against-the-weight-of-the-evidence challenge completes four steps:

1. Identify a factual proposition needed to sustain the result;

2. Marshal all record evidence supporting that proposition;

3. Marshal contrary evidence of record, subject to the factfinder's credibility determinations, explicit or implicit; and

4. Prove, in light of the whole record, that the step 2 evidence and its reasonable inferences are so non-probative that no reasonable mind could believe the proposition.

*Jordan v. USF Holland Motor Freight, Inc.*, 383 S.W.3d 93, 95 (Mo.App. 2012) (citing *Stewart v. Sidio*, 358 S.W.3d 524, 527-28 (Mo.App. 2012); *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo.App. 2012)). Employer completely fails to address the second step in their analysis,[1] ignoring any evidence in the record supporting the Commission's findings, and, in addressing the third step, ignores the Commission's credibility determinations. These failures strip Employer's argument of any persuasive or analytical value. *Id.* The absence of a cogent argument is sufficient reason alone to deny Employer's point and to affirm the award. *Id.* Nevertheless, we

---

[1] Although Employer does make passing mention that "the Commission's finding could have only been arguably supported by Gonzalez' [sic] own testimony, as well as the opinions of Dr. Bennoch and Phil Edlred[,]" this mention is the only reference to the step 2 evidence as they fail to further expound upon this statement in any way other than to highlight select statements contrary to the award. This cursory mention does not comply with the second-step requirement in this analysis.

address each of Employer's individually flawed arguments and determine that none has any merit.

Section 287.020.6 defines the term "total disability" as the "inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident." "The approved legal standard for determining permanent total disability applies two tests:  in general, whether the claimant is able to compete on the open job market; and, specifically, whether an employer would reasonably be expected to employ the claimant in his or her present physical condition." *Michael v. Treasurer*, 334 S.W.3d  654, 663 (Mo.App. 2011).  The "'inability to return to any employment' means that the employee is unable to perform the usual duties of the employment under consideration in the manner that such duties are customarily performed by the average person engaged in such employment." *Kowalski v. M-G Metals and Sales, Inc.*, 631 S.W.2d 919, 922 (Mo.App. 1982). In making these determinations, the fact-finder "is not bound by the percentages of disability assigned to a claimant by the medical experts[,]" and can take into consideration a claimant's age, education, and physical abilities, or the lack thereof.  *Baxi v. United Techs. Automotive*, 956 S.W.2d 340, 343 (Mo.App. 1997).  Finally, the question of disability is not purely a medical one:  "The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Grauberger v. Atlas Van Lines, Inc.*, 419 S.W.3d 795, 801 (Mo.App. 2013) (internal quotation marks omitted).

In its award, the Commission found Gonzales to be "unable to communicate much in English" and to have "limited math skills."  It further found Gonzales to be right-hand dominant;

14

to be unable to perform hand-intensive jobs; and to be physically incapable of performing the jobs identified by Sprecker, including that of a laundry worker, assembler, housekeeper, and dry clean presser. The Commission expressly relied upon the opinions of Eldred and Dr. Bennoch, specifically finding their testimony to be credible and persuasive and that of Sprecker to be incredible. Furthermore, the Commission implicitly relied upon Gonzales's own testimony, as well as the ALJ's observations of Gonzales, in reaching its decision. To that end, "[a] single expert's opinion may be competent and substantial evidence in support of an award of benefits[,]" *Kent v. Goodyear Tire and Rubber Co.*, 147 S.W.3d 865, 868 (Mo.App. 2004), and a claimant's own credible testimony can, independently, constitute substantial and competent evidence, *Hampton*, 121 S.W.3d at 223-24. Both were present here.

In contesting the Commission's award, Employer relies primarily upon Gonzales's attempt to return to work in November 2009, arguing that Gonzales's inability to adequately perform both jobs assigned to him following his injury was the result of his "refusal to use both hands even though the doctor had released him to use the injured hand without restriction." According to Employer, Gonzales "was terminated because he refused to give the full effort to which he had been released." Employer's contention, however, is misguided. Employer relies heavily on Dr. Toma's failure to place any restrictions upon Gonzales's use of his right hand, while at the same time ignoring Dr. Toma's own observation that Gonzales still complained of severe pain, was hypersensitive to any touch, and had not regained full range of motion in his right hand; Employer likewise simply ignores the supporting testimony of Eldred and Dr. Bennoch. Employer further ignores Gonzales's own testimony that he attempted to use both hands upon his return to work at Butterball but was simply unable to continue to do so because of the pain and sensitivity. Even Gonzales's supervisor testified that Gonzales repeatedly told

15

her his right hand hurt too much to continue to use it, regardless of Butterball policy. Employer completely discounts Gonzales's own account of his pain and suffering, as well as Dr. Toma's observation of such pain and suffering, simply because Dr. Toma placed no official restrictions upon Gonzales as a condition of his return to work. In addition, with nothing to support it, save conjecture, Employer asserts that Gonzales "refused" to do as he was told because he did not want to work. All of these arguments, claims, contentions and assertions are in direct contradiction to the Commission's findings of credibility, both explicit and implicit. Moreover, credibility determinations notwithstanding, there is no "hard-and-fast rule that *any* post-injury employment, no matter how limited in scope or how substantially an employee is accommodated, necessarily precludes a finding of permanent total disability." *Molder*, 342 S.W.3d at 414.

Employer further cites Gonzales's attempt to receive unemployment benefits as proof that Gonzales is employable. However, Employer cites to no authority, and we are unable to find any, indicating that filing for unemployment benefits automatically disqualifies a claimant from being considered permanently and totally disabled. Indeed, in the case at bar, Gonzales filed for unemployment benefits immediately upon his termination from Butterball and prior to attempting to find work elsewhere. At the time, as Employer repeatedly points out, Gonzales was not under any express restrictions as to work, and he had just completed nearly two months of attempting to comply with his responsibilities at Butterball using one hand. It is not unreasonable that, at the time of his return to Butterball and his application for unemployment benefits, Gonzales wanted to work and felt he was able to work, albeit using only one hand. It was after both his return to Butterball and his filing for unemployment that Gonzales was denied employment with "several companies" and was re-evaluated and given severe work restrictions.

16

Relatedly, Employer states that Gonzales has an undesirable attitude toward work, relying upon both Gonzales's agreement during cross-examination that he considers himself retired and Sprecker's testimony that Gonzales was "not willing to go to work and jeopardize his Social Security disability benefits." This reliance upon Sprecker flies in the face of the Commission's express finding that her testimony was incredible.

The remainder of Employer's argument attempts to convince this court to re-weigh the testimony of Sprecker and Drs. Toma and Parmet and judge anew their credibility. This we cannot do. *See* ***Hornbeck***, 370 S.W.3d at 629; ***Armstrong***, 391 S.W.3d at 470-71. The Commission expressly found the testimony of Eldred and Dr. Bennoch credible, and implicitly found Gonzales's to be so; it found Sprecker's and Dr. Parmet's testimony incredible. To entertain Employer's argument would disregard these findings and effectively re-try Gonzales's claim *de novo*, and such is not the place of our court. Even assuming, *arguendo*, we would have reached a different result than the Commission, we cannot reverse its decision so long as the Commission acted within its authority. *See **Underwood***, 369 S.W.3d at 66. In this case, the Commission relied upon the substantial and competent evidence of a medical expert, a vocational expert, and the claimant himself in reaching its decision, a decision thus reached within the purview of the Commission. Such a decision was not against the overwhelming weight of the evidence. Employer's point is denied.

## Decision

The Commission's award is affirmed.

GARY W. LYNCH, J. – Opinion author

MARY W. SHEFFIELD, P.J. – concurs

DON E. BURRELL, J. – concurs

17